### CRAMER v. DALLAS LUMBER CO.
### (No. 7561.)

(Court of Civil Appeals of Texas. San Antonio. April 21, 1926.)

**1. Mechanics' liens ⊂⇒115(1)—Owner of property, who executed mechanic's lien contract and lien note to contractors, held not liable on subcontractor's claim for material and labor furnished in building house.**

Owner of property, who executed mechanic's lien contract and lien note to contractors, *held* not liable for material and labor furnished by subcontractor, since by such action he paid for house, and statute authorizing materialman's lien merely appropriates so much as may be due on improvements to payment of debt.

**2. Bills and notes ⊂⇒144 — Property owner's note, given to contractor with mechanic's lien contract, to secure him in erection of house, held commercial paper.**

Property owner's note, given to contractor with mechanic's lien contract to secure him in erection of house, *held* commercial paper, which contractor could sell to any one who desired to buy it.

**3. Bills and notes ⊂⇒365(1).**

No attack can be made on negotiable note in hands of purchaser in good faith for value.

---

⊂⇒For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

**4. Bills and notes ⟪⟫165—Note given to contractor with mechanic's lien contract held negotiable, even though it stated transaction that gave rise to its execution (Negotiable Instruments Act [Vernon's Ann. Civ. St. Supp. 1922, art. 6001—3]).**

Note given to contractors with mechanic's lien contract to secure them for labor and material *held* negotiable in view of Negotiable Instruments Act (Vernon's Ann. Civ. St. Supp. 1922, art. 6001—3), even though it stated transaction that gave rise to its execution.

**5. Frauds, statute of ⟪⟫18(1)—Verbal promise, without consideration, of property owner to subcontractor, to pay for materials for building house, held within statute.**

Verbal promise, without consideration, of property owner to subcontractor to pay for materials for building house, *held* within statute.

Appeal from District Court, Dallas County; T. A. Work, Judge.

Suit by R. Cramer against the Dallas Lumber Company and others. From the judgment on a general demurrer in favor of the named defendant and another, plaintiff appeals. Affirmed.

W. M. Cramer, of Dallas, for appellant.

Burgess, Burgess, Sadler, Chrestman & Brundridge and Burgess, Owsley, Storey & Stewart, all of Dallas, for appellees.

FLY, C. J. Appellant brought this suit against J. B. King, Lange & Trumpf, Dallas Lumber Company, American Exchange National Bank, and C. J. Glenn, seeking to obtain a judgment for material and labor furnished J. B. King and for a foreclosure of a mechanic's lien against all the parties. The court sustained a general demurrer to the petition as to the American Exchange National Bank, C. J. Glenn, Dallas Lumber Company, and J. B. King, and rendered judgment in favor of appellant against Lange & Trumpf, a partnership, and P. Trumpf individually, in the sum of $340.93. The appeal has been prosecuted from the judgment on general demurrer in favor of J. B. King and Dallas Lumber Company.

No brief has been filed by appellant. The only question arising in the case is the fundamental one as to the action of the court in sustaining a general demurrer in favor of King and the lumber company.

It was alleged that J. B. King and wife executed to Lange & Trumpf a mechanic's lien contract and a lien note to secure them for labor and material in the erection of a certain house and improvements, and on the same date executed to A. L. Commack, as trustee, a deed of trust to give additional security for the debt evidenced by the note; that Lange & Trumpf transferred their interest in the mechanic's lien note to the Dallas Lumber Company, which company and others

furnished labor and material to be used in the construction of King's house and improvements. Appellant alleged that King told him that labor and materials furnished by appellant could be charged to Lange & Trumpf and himself, and that he furnished labor and material of the value of $1,018.68, on which only $340.93 was paid, and that the lien contract inured to the benefit of appellant. It was alleged that the Dallas Lumber Company transferred the note and lien to the American Exchange National Bank, and the latter assigned the same to C. J. Glenn, who was paid the full amount and gave a release of the lien. Appellant alleged that he gave notice in writing to King on September 1, 1923, that his bill had not been paid and that he would file a mechanic's lien against the house, and on September 12, 1923, he filed an affidavit as required by law and had the same duly recorded, the account being drawn against King and Lange & Trumpf. It was also alleged that appellant had been informed and believed that the Dallas Lumber Company was one of the building contractors, and conspired with Lange & Trumpf to defraud subcontractors, and was therefore liable for the debt.

[1, 2] When J. B. King executed the note to Lange & Trumpf for the sum charged for the erection, he had paid for the house, and the note became commercial paper, and the contractors had the right to sell the note to any one who desired to buy it. They exercised that right, and sold the note on the day of its date to the Dallas Lumber Company. King, after making his contract with Lange & Trumpf, had settled for all labor and material, and did not owe any one for labor or material furnished the contractors. The statute giving authority to the materialman to fix a lien for material furnished does not create a debt against the owner of the property, but merely appropriates so much as may be due on the improvements to the payment of the debt for the material. Lonergan v. San Antonio Trust Co., 104 S. W. 1061, 106 S. W. 876, 101 Tex. 63, 130 Am. St. Rep. 803. As said in Fullenwider v. Longmoor, 11 S. W. 500, 73 Tex. 480:

"The lien acquired is, however, in all cases subordinate and never superior to the terms of the contract. No original indebtedness is created by establishing the lien. The debt of the owner of the property as fixed by the contract cannot be modified, changed, or enlarged by the proceedings fixing the lien. These proceedings do no more than establish a lien against the property for such amount as is unpaid and is payable by the terms of the contract when the proceedings are commenced. From the time of the service of the notice upon the owner of the property he can make no further payment to the contractor without incurring liability for the lien debt, if proper steps shall be taken to establish it, to the extent of his indebtedness under the contract when the notice is served.

⟪⟫For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

If the owner of the property is indebted to the contractor, the service of the notice, if followed by the acts required to fix the lien, secures the fund, as does a writ of garnishment in an ordinary case, except that a pro rata distribution may become necessary by the terms of the statute between different lienholders, and the process of collecting the money is different."

[3, 4] The note was not attached to the petition, and there is nothing to indicate that it was not negotiable on its face, and, being negotiable, no attack could be made upon it in the hands of a purchaser in good faith for value. It was not alleged that the note contained any conditions, but showed it was an unconditional promise to pay. Even if we could presume that the note stated the transaction that gave rise to its execution, it would still be a, negotiable instrument. Neg. Inst. Act, Vernon's Ann. Civ. St. Supp. 1922, art. 6001—3.

[5] The verbal promise by King to pay for the material was without consideration and within the purview of the statute of frauds.

The judgment is affirmed,