**RUBEROID CO. v. SCOTT et al.**

No. 14473.

Court of Civil Appeals of Texas. Dallas.

May 9, 1952.

Bowyer, Gray, Thomas & Crozier, Dallas, for appellant.

Turner, Rodgers, Winn, Scurlock & Terry, Fritz Lyne, Malone, Lipscomb & Seay, Biggers, Baker & Lloyd, Patton & Giles, Aubrey J. Roberts, Brundidge, Fountain, Elliott & Bateman, Ralph D. Churchill, Corenbleth, Thuss & Jaffe, Ivan Irwin, Dallas, for appellees.

CRAMER, Justice.

This cause had its inception in a contract between Harry Yates as contractor and The Ruberoid Company as owner. Yates agreed to repair and rebuild portions of an above ground concrete water tank located on Ruberoid's land for a consideration of $9,573.44. Travelers Indemnity Company was surety on the performance bond, with Ruberoid, as well as all subcontractors, workmen, laborers, mechanics and materialmen who worked for, or furnished materials to, Yates in the performance of such contract, as their respective interests might appear, as obligees.

After Yates asserted he had substantially completed the work under the contract, Preston Scott filed this proceeding, as a subcontractor, against Ruberoid, its surety, and Yates on a claim for $3,100 due him by Yates and for foreclosure of his mechanic's lien. Other laborers and materialmen thereafter intervened. Ruberoid answered Scott and the interveners (all of whom claimed to be beneficiaries under the performance bond) by exceptions, general denial, and by answer setting up its contract with Yates, asserting that it (Ruberoid) had made partial payments to Yates on such contract in the sum of $8,767.73 prior to the time it had knowledge of any of the claims of materialmen, subcontractors, etc.; also that the work to be performed by Yates had not been completed in accordance with the contract; set out specifically the defects claimed; asserted that in its endeavor to repair such defects it spent an additional $1,000, and therefore it owed Yates' subcontractors, materialmen, etc., nothing. By cross action, Ruberoid sued Yates for $9,573.44, asserting that the tank as builded was worthless for its purpose and that Yates had abandoned all work thereon; also that it would cost an additional $8,573.44 to complete the job according to its original contract with Yates. Also sought judgment against Travelers, as surety for Yates, for its pro rata part of the principal amount of the performance bond.

Yates answered Ruberoid's pleading by general denial and asserted that Ruberoid, before their contract was executed, had employed the North Texas Concrete Company to build a certain two-compartment reinforced concrete water reservoir and after its completion such reservoir failed to hold water. That he, Yates, then offered to contract to properly repair the tank, but that Ruberoid itself employed an engineering firm to prepare plans and specifications for it, covering the reconstruction and repair work to be done on such water reservoir. After the engineering firm so employed by Ruberoid completed the plans and specifications, etc., that he, Yates, then contracted to reconstruct and repair the reservoir according to such engineer's plans and specifications; that he fully complied with his final agreement and did repair, reconstruct, etc., the reservoir in question fully in accordance with such plans and specifications; also extra work for which he was paid $172; and in addition, worked on a sump pit on which he ex-

pended $1,624.97 for labor and $136 for material; further that he spent $595 in cash for rental on a mixer and jet crete gun necessary in connection with said work; and that he became liable for $219.37 for industrial insurance, social security, and bookkeeper; and that such extras amounted to $2,576.04. That Ruberoid also agreed to pay 15% on said sum, as his compensation for such extras, which amounted to $386.40, or an overall total to him of $2,962.44. He further alleged there was a balance due him on the original contract price of the repair job on the water reservoir of $974.-19 and prayed for a judgment against Ruberoid for a total sum of $3,936.63.

The Travelers Indemnity Company answered generally and impleaded all known claimants who might have a claim on the bond on which it was surety, alleging that it is able and willing to discharge all claims up to the penal amount of its bond; further, that if claims be established against its principal in excess of the full penal sum of its bond, then that such penal sum be prorated among the claimants equitably by the court; also for judgment over against Yates for any sum it should be, by final judgment, ordered to pay to claimants under such bond.

After all interested parties were before the court, and trial on the merits by the court without a jury, judgment was entered in substance, as follows: (1) That Yates take nothing on his cross action against Ruberoid; for Preston Scott against Yates and his surety, Travelers, and against Scott on his action against Ruberoid, and canceling Scott's mechanic's lien; (3) for Ruberoid against Yates for $1,509.81; (4) for Blue Diamond Company, intervener, against Yates and Travelers for $1,067.95, and against Yates alone for $160.19; (5) for E. E. Farrow & Company, intervener, against Yates and Travelers for $159.50; (6) for Lewis & Lambert against Yates and Travelers $2,101.66 and against Yates alone for an additional sum of $315.25; (7) for Lofland Company against Yates and Travelers for $305.62 and against Yates alone for an additional $45.84, and against Lofland Company as against Ruberoid; (8) for Wamix, Inc., against Yates and Travelers for $302 and against Yates alone for an additional $30.30; (9) for Travelers over and against Yates for all sums recovered against Travelers as surety for Yates.

No findings of fact or conclusions of law were requested of, or filed by, the trial court.

From the judgment Ruberoid and Scott duly perfected this appeal.

Appellant Ruberoid briefs three points in substance: (1) Error in awarding it only $1,509.81; (2) error in failing to consider and in disregarding the evidence of Engineer Chappell as to the amount necessary to complete the job under the written contract, plans and specifications, Chappell's testimony being the only evidence thereon; and (3) error in failing to award Ruberoid its actual damage for expenditures made by it in attempting to complete the improvements.

Scott, on his appeal, briefs one point, to wit: "Preston Scott perfected a valid lien against the Ruberoid Company;" and as a reply to Ruberoid's appeal, one point, to wit: "It is presumed that the trial court found all facts necessary to support the judgment."

Yates did not file a brief.

The Travelers Indemnity Company counters appellant's points with five counter points in substance as follows: (1) Where the contract expressly provides that the owner is responsible for the adequacy of the design, sufficiency of the plans and specifications and the safety of the structure, such clause modified the requirement in the specifications themselves as to limitation on the amount of leakage allowable on completion; (2) where the original estimate submitted by Ruberoid's engineer showed an item of $1,152 for "cement gun work of closing cracks, repairing broken east wall" and "if the entire inside wall of the tank is over coated with 1/2 inch of gunite, add the sum of * * * $1,075. And under the undisputed evidence all work called for by the contract had been satisfactorily completed except that the gunite had not been put on under proper pressure and would be removed and re-

applied under proper pressure, Ruberoid could not claim total failure of consideration, but could only recover cost of removing and reapplying gunite; (3) where Ruberoid's only contention was that the tank was worthless because it lost water in excess of ¾ inch in 24 hours, due solely to improper application of gunite, the proper measure of damages was cost of removing and reapplying gunite properly; (4) Ruberoid's only witness, its engineer, admitted all work covered by the plans and specifications had been properly performed except for the application of gunite, and such work would be retained and utilized in the repair of the tank, the contractor would be entitled to credit for the work performed and its value offset against the total contract price; and Ruberoid cannot retain the work done, not pay for same, and then by a different method than the contract method, make the water tank tight; that is, use a much greater quantity (and more expensive) gunite than called for on the original contract, and thereby make such repairs practically as costly as the original contract price, and collect therefor from the contractor and his bondsmen; and (5) the trial court's findings based on sufficient evidence as to the defects in the work, and evidence of cost to remedy such defects, should not be disturbed.

All points will be considered together.

## Opinion.

The material dispute between the parties here is with reference to whether (1) the contract between Ruberoid, the owner, and Yates, the contractor, was one where the contractor Yates accepted the responsibility of making the tank water-proof within the limits of not more than ¾″ of water in 24 hours; or (2) was one where Ruberoid, who employed its own engineers and prepared plans and specifications which Yates was bound to follow, accepted the responsibility of waterproofness if the plans and specifications were followed by Yates.

▮▮ The general rules applicable are: Where a contract does not provide to the contrary, the owner does not warrant that the materials and plans and specifications will produce the building intended by the parties. The builder must decide that question for himself and at his peril and is liable to the owner if the intended building is not produced. Lonergan v. San Antonio Loan & Trust Co., 101 Tex. 63, 104 S.W. 1061, 106 S.W. 876, 22 L.R.A.,N.S., 364, and numerous cases cited in Shepard's Texas Citations.

The agreements between Ruberoid and Yates, on their face, show that the plans are dated June 22, 1949; that the standard form of agreement and bond was dated and signed October 31, 1949.

The evidence of the conversations leading up to the signing of the final agreement, bond, etc., is conflicting. Appellant Ruberoid bases its defense and claim upon the theory that the notation on the blue print or plan is as follows: "Upon completion of the repair of the tank, it shall be filled with water and shall not lose more than ¾″ of water in 24 hours. This test shall be satisfactorily completed prior to acceptance of the tank."

Appellees rely, if they are to sustain the judgment here, upon the provisions of the "Standard Form of Agreement," the "General Conditions of the Agreement," and the "Performance Bond." Paragraphs 10 and 48 of the General Conditions of the Agreement read:

"10. Superintendence and Inspection. It is agreed by the Contractor that the Owner shall be and is hereby authorized to appoint from time to time such Engineers, supervisors or inspectors as the said Owner may deem proper, to inspect the material furnished and the work done under this agreement, and to see that the said material is furnished, and said work is done in accordance with the specifications therefor. The Contractor shall furnish all reasonable aid and assistance required by the Engineers, supervisors or inspectors for the proper inspection and examination of the work and all parts of the same. The Contractor shall regard and obey the directions and instructions of any Engineers, supervisors or inspectors so appointed, when the same are consistent with the obligations of this Agreement.

and the accompanying specifications, provided, however, should the Contractor object to any order by any subordinate engineer, supervisor or inspector, the Contractor may within six (6) days make written appeal to the Engineer for his decision."

"48. Adequacy of Design. It is understood that the Owner has selected the Engineer named in this Agreement to prepare the plans and specifications, and all Supplements thereto; and agreed that the Owner will be responsible for the adequacy of the design, sufficiency of the plans and specifications, and the safety of the structure, provided the Contractor has complied with said plans and specifications, all modifications thereof, and additions and alterations thereto, approved by the Engineer. The burden of proof shall be upon the Contractor to show that he has complied with this contract, said plans, specifications, and all modifications thereof, and all additions and alterations thereto."

It is apparent that there is a conflict between the terms of the written agreement prepared by Ruberoid's engineer wherein Ruberoid is made responsible for "the sufficiency of the plans and specifications," and the notation on the plans which sets a maximum water shrinkage in the completed job.

■ Since the evidence is conflicting on questions as to the full performance of the contract, we will confine ourselves to that evidence supporting the judgment to determine its sufficiency to sustain the judgment. Chappell, Ruberoid's engineer, with certain qualifications not material here, admitted that the weight of the water in the tank, when filled, caused the walls to separate from the floor and water escaped from that point. Yates testified he turned in substantial completion; did extra work as directed by the engineer; that 10% of the estimated amount of work done had been retained and he was entitled to recover therefor; that all work performed by him was in accordance with the plans and specifications. He admitted that notwithstanding the above facts, the tank still

leaks excessively. He further testified he assumed that if he did the work according to such plans and specifications drawn by Ruberoid's engineers, that the tank would not leak; that he did considerable extra work at the direction of the engineer. Also that he was never advised by the engineers that he was to coat the floor of the reservoir, and further that the plans and specifications did not call for such work to be done. He now understands that the engineer states such coating is necessary to make the tank hold water.

■ Such testimony, together with other circumstances shown by the record, supports the trial court's holding that the written contract superseded the preliminary oral agreements (one of which was noted on the plans prepared some four months before the contract itself was executed) and made Ruberoid responsible "for the adequacy of the design, sufficiency of the plans and specifications, and the safety of the structure; * * *" if Yates, the contractor, followed such plans and specifications. In our opinion such evidence is sufficient to support the court's judgment. Ruberoid's points are therefore overruled and the Travelers Indemnity Company's counter points are sustained.

■ On the appeal of Preston Scott, the record shows Ruberoid paid out to Yates, the contractor under whom Scott claims to be a subcontractor, the sum of $8,767.73, or $805.71 less than the contract price of $9,573.44. The record also shows the court found it would cost $1,509.81 to fully complete Yates' obligations to Ruberoid. Under such findings there was nothing due Yates by Ruberoid, out of which Scott could collect from Ruberoid the amount due him by Yates. In other words, since Ruberoid owed nothing to Yates, it, Ruberoid, owed nothing to subcontractors under Yates.

■ The statute under which a materialman is permitted to fix a lien for material and labor furnished by him and used in the erection of improvements by a contractor, does not create a debt in favor of the materialman against the owner, but only appropriates, after a compliance with the

statute, as much of the money which the owner may, at the time of service of notice on such owner, owed to the contractor. Fullenwider v. Longmoor et ux., 73 Tex. 480, 11 S.W. 500; Campbell v. Teeple, Tex.Civ.App., 273 S.W. 304; Cramer v. Dallas Lumber Co., Tex.Civ.App., 283 S.W. 596.

Preston Scott's points, on his cross-appeal, are overruled.

No reversible error appearing in the judgment below, it is

Affirmed.