S. M. WILSON & COMPANY, Plaintiff-Appellee, *v.* REEVES RED-E-MIX CONCRETE, INC., Defendant-Appellant.

Fifth District   No. 75-254

Opinion filed June 3, 1976.—Rehearing denied July 7, 1976.

Mateyka & Hill, of Granite City (William R. Haine, of counsel), for appellant.

Frank C. Mansfield, of Springfield, for appellee.

Mr. PRESIDING JUSTICE KARNS delivered the opinion of the court:

Defendant-appellant, Reeves Red-E-Mix Concrete, Inc., appeals from a judgment of $14,123.95 entered in favor of plaintiff-appellee, S. M. Wilson & Company, by the Circuit Court of Madison County after a bench trial. On appeal defendant contends that the judgment is against the manifest weight of the evidence and contrary to law.

Plaintiff was the general contractor in charge of construction of an addition to St. Elizabeth's Hospital in Granite City, Illinois. Plaintiff contracted with defendant, as vendor, for the furnishing of concrete to be mixed to certain specifications supplied by a design laboratory employed by plaintiff. The only specification relevant here is that the concrete was required to have a compressive strength of 3,000 pounds per square inch. Concrete was delivered to the construction site by defendant in trucks containing seven cubic yards of concrete. The concrete was removed from the truck, transported to where it would be used, poured, cured and finished by plaintiff's employees. As was the custom on this particular project, wet concrete was removed from the first load which arrived each day and was submitted to tests for air content, slump, weight and, after hardening, compressive strength. These tests are known as cylinder tests.

When the first truckload arrived on the day in question plaintiff's superintendent, as was his custom, visually inspected the concrete. He pronounced it "too harsh" or "rough" and refused to accept the concrete. The concrete was returned to defendant's plant whereupon it was remixed and returned to the construction site. At this point the truck contained 8 cubic yards instead of the customary 7. The concrete was approved visually and poured. In the meantime a second truck arrived containing 7 cubic yards of concrete upon which cylinder tests were

conducted. The remixed concrete was not so tested. Several months later plaintiff discovered that a portion of the sixth floor slab was "abrading" or "peeling." Core samples were taken from the hardened slab and tested for compressive strength. Of the ten samples removed only one indicated the required strength; the other averaged approximately 2400 pounds per square inch compressive strength.

At the insistence of the architect, plaintiff conducted load tests on the slab to see if the slab could be used for the project despite the substandard strength. The first test indicated that the slab would have to be replaced but a second test, conducted pursuant to industry custom, indicated that the strength of the slab was satisfactory for use in the project. The cost of these tests to plaintiff was $14,588.10. Defendant was notified of the defect in the slab and demand was made for payment of the cost of the tests. Demand was refused. Plaintiff then notified defendant that payment for concrete delivered would be withheld as a set-off for the cost of the tests. Defendant thereafter refused to deliver more concrete after delivery of concrete worth $2,521.28. Plaintiff was then required to buy concrete from another source at an added expense of $1,278.96. Judgment was entered for plaintiff for the cost of the tests and the cost of acquiring additional concrete. Judgment in the amount of $1,743.11 was entered in favor of defendant upon its counterclaim for the value of concrete delivered but not paid for. The amount of the judgment appealed from, therefore, is the difference between those two figures. Judgment was entered for defendant on plaintiff's additional count for punitive damages. That judgment is not before us.

Defendant filed an affirmative defense to plaintiff's amended complaint alleging that all concrete delivered by defendant was "accepted" by plaintiff and that any defect in the finished concrete was solely the fault of plaintiff's employees. At trial, defendant attempted to show that any one of several factors beyond its control could have caused the defect and each was as likely the culprit as defective concrete delivered by defendant. Witnesses for both sides testified that several factors could affect the compression strength of concrete including the design mix, mixing procedures, addition of water, time between mixing and pouring, pouring, curing and finishing techniques, and weather, particularly heat, humidity, and wind velocity. No direct evidence was presented that any concrete was substandard when delivered with the exception of plaintiff's superintendent's rejection of the "harsh" load. All cylinder tests indicated concrete of the required strength; although, not every load was tested, including the questionable load. Plaintiff's evidence established that the load refused and subsequently remixed was poured in the area later found to be substandard; although, the evidence was in conflict as to whether this was the only load poured in the area. No evidence was

presented that any of plaintiff's employees did anything unusual to the sixth floor slab or in any way contributed to the defect. Plaintiff's evidence showed that at the time the slab was poured the weather was clear and warm with only a slight wind.

■■ Defendant-appellant relies upon a line of cases beginning with *Condon v. Schoenfeld*, 214 Ill. 226, 230, 73 N.E. 333, 335 (1905), in which the court stated, "It cannot be said that the existence of a certain fact may reasonably be inferred from the evidence when the existence of another fact inconsistent with the first can be, from the same evidence, inferred with equal certainty." (See also *Celner v. Prather*, 301 Ill. App. 224, 22 N.E.2d 397 (2d Dist. 1939); *Wilke Metal Products, Inc. v. David Architectural Metals, Inc.*, 92 Ill. App. 2d 265, 236 N.E.2d 303 (1st Dist. 1968).) Thus, defendant argues, it cannot be said with certainty that the defect in the sixth floor slab which resulted in the consequential damage to plaintiff was caused by defective concrete where the same evidence suggests equally the possibility that some neglect by plaintiff or *vis major* could have caused the defect. We cannot agree. The language used in *Condon* and repeated or paraphrased in the other cases cited indicate a limited application of the rule. Contrary to defendant's argument, the evidence in the instant case does not support the inference of plaintiff's wrongdoing or blameless cause with "equal certainty." Rather the evidence of a cause of the defect other than defective concrete suggests only a possibility of the occurrence of one of several factors which could have caused the weakening of the slab. No evidence whatsoever was presented that any of these factors occurred. On the other hand, plaintiff introduced evidence that one load of concrete was defective and returned to the plant, that the same concrete was remixed and a greater quantity sent back to the job, and that this concrete was poured in the area of the defect. We do not believe that these facts can be considered merely coincidental. We believe that the evidence, though largely circumstantial, was sufficient to justify the court's ruling and that the judgment was not contrary to the manifest weight of the evidence.

■■ Defendant finally argues that plaintiff's action is barred by its "acceptance" of the concrete under the Uniform Commercial Code (Ill. Rev. Stat. 1975, ch. 26, par. 2—601 *et seq.*). Defendant assumes that this transaction is controlled by the Code. Plaintiff contends that the Code was "not intended" to cover this type of transaction. Although the definition of "goods" contained in the Code is vague, we believe that article 2 of the Code dealing with sale of goods is applicable and determinative of the issues. (Ill. Rev. Stat. 1975, ch. 26, par. 2—101 *et seq.*) It is defendant's position that plaintiff had a reasonable opportunity to inspect the goods delivered and in fact accepted them and cannot now assert nonconformity with the contract specifications. Section 2—607(2) states in

pertinent part, "Acceptance of goods by the buyer precludes rejention of the goods accepted and if made with knowledge of a non-conformity cannot be revoked because of it * * * but acceptance does not of itself impair any other remedy provided by this Article for non-conformity." Subparagraph 3 of that section states in pertinent part, "Where a tender has been accepted (a) the buyer must within a reasonable time after he discovers or should have discovered any breach notify the seller of breach or be barred from any remedy." If the goods are accepted and breach is properly discovered and notice is properly given, all as outlined above, the buyer has a right of recovery for the "loss resulting in the ordinary course of events from the seller's breach as determined in any manner which is reasonable." (Ill. Rev. Stat. 1975, ch. 26, par. 2—714.) "Incidental and consequential" damages may be recovered in a "proper case." (Ill. Rev. Stat. 1975, ch. 26, par. 2—714.) "Incidental damages" include, among others, any "reasonable expense incident to the delay or other breach." Ill. Rev. Stat. 1975, ch. 26, par. 2—715.

There can be no doubt that plaintiff as buyer accepted the concrete. After visual inspection plaintiff's superintendent approved the remixed load of concrete and ordered it poured on the sixth floor. After the defect was discovered and the tests performed plaintiff decided to leave the concrete in place instead of removing it. Thus plaintiff neither rejected the concrete nor revoked its acceptance under the Code.

The question then becomes when plaintiff should have discovered the defect. It is defendant's position that plaintiff should have known of the insufficiency of compressive strength in the concrete before it was in place. We believe this to be unreasonable. Plaintiff followed its usual procedure of taking cylinder tests from the first load delivered each day. These tests offered plaintiff some evidence of the quality of the concrete. But the defect complained of here was lack of compressive strength which would not be discovered, even in the cylinder tests, until the concrete hardened up to twenty-eight days later. By this time, of course, the concrete poured on the job would also have hardened. Once the concrete had hardened, the damage would be the same regardless of the time of discovery. We believe that because of the nature of the goods involved plaintiff was not lax in the discovery of the defect and defendant was not prejudiced by the delay.

The third test under section 2—607 as incorporated in section 2—714 is that the buyer promptly notify the seller of the breach. The evidence was undisputed that plaintiff contacted defendant as soon as the defect was discovered and attempted to work with defendant to cure the defect.

The measure of damages under section 2—714 is the "loss resulting in the ordinary course of events" from the breach including incidental and consequential damages. Had plaintiff removed the slab defendant would

have been liable for the cost of removal and replacement and for any loss incurred through the delay necessarily involved. Plaintiff chose to conduct tests approved in the industry to determine if the slab could be used. We believe the cost of these tests to be a reasonable incidental expense under section 2—715. The cost of obtaining additional concrete after defendant's refusal to deliver the amount contracted for was a reasonable cost of "cover" as it exceeded the contract price and is recoverable under section 2—715, cover being the act of obtaining goods from another source to complete the project after the vendor refuses to supply the goods contracted for.

The judgment of the Circuit Court of Madison County is affirmed.

Affirmed.

EBERSPACHER and JONES, JJ., concur.