AMERICAN NATIONAL INSURANCE COMPANY, Appellant,

v.

TRI–CITIES CONSTRUCTION, INC., Appellee.

No. 16833.

Court of Civil Appeals of Texas, Houston (1st Dist.).

April 21, 1977.

Dibrell, Dibrell, Greer & Brown, Ronald M. Gipson, Galveston, for appellant.

Childs, Fortenbach, Beck & Guyton, James J. Lee, Houston, for appellee.

PEDEN, Justice.

This appeal stems from the failure of Markland Development, a real estate developer, to consummate a loan commitment agreement with American National Insurance Company, as lender. Tri-Cities Construction, Inc., the assignee of Markland Development, sued appellant, American National, to recover an $11,000 "standby fee" paid by Markland to American National upon confirmation of the loan commitment. Appellant retained the fee as liquidated damages when Markland sold the property to Chrysler Realty before the closing date of the loan, but the trial court awarded the $11,000 to Tri-Cities on jury findings that Markland did not breach the loan agreement and that the fee amounted to a penalty.

On a prior appeal, we reversed and remanded a summary judgment granted in favor of American National. Tex.Civ.App., 523 S.W.2d 426 (1975, no writ).

Markland Development employed a mortgage broker to procure permanent financing for a car dealership to be built by Markland and leased by Chrysler Realty. American National approved the broker's application for a $550,000 loan at 10% interest for a term of 25 years and delivered its commitment agreement to the broker. After American National had agreed to four written changes, Markland executed the commitment agreement and paid in the $11,000 fee.

In response to Special Issue No. 1, the jury did not find that Markland breached the loan commitment. Appellant's first two points of error contend that the evidence conclusively showed that Markland did breach it. We sustain these points.

The applicable provisions of the loan commitment were:

"18. At the time this commitment is accepted, the applicant shall make a deposit of $11,000 as a standby fee. In the event all the conditions and requirements of this commitment are not satisfied and the loan is not closed prior to the expiration of this commitment, the standby fee shall be retained as liquidated damages; otherwise, the fee shall be refunded upon closing of this loan. American National agrees to refund the standby fee, in the event the appraisal report required in Condition 8 of this commitment is not satisfactory to us."

"20. Mortgage to contain the following clause: 'If the mortgagor (grantor) elects to sell the mortgage premises herein described, noteholder shall have the first right of refusal to purchase said premises upon noteholder's receipt of any bona fide purchase offer for a period of 30 days after written notice of offer is received by noteholder. This right to purchase shall be automatically waived if noteholder fails to exercise its first right of refusal within aforesaid 30 day period. This first right of refusal shall not apply in the event Chrysler Realty Corporation and/or its subsidiary exercises its right to purchase under a lease agreement with the borrowers.'"

"21. Lease to Chrysler Realty Corporation shall permit tenant its successors and assigns to purchase premises no sooner than the eleventh loan year and in the event premises are purchased then purchase price is to be not less than the sum of the then existing mortgage balance, all accrued items and applicable prepayment fee.

"Landlord to assign his interest to any purchase proceeds under the lease to noteholder. In the event Chrysler Realty Corporation exercises its option to purchase under the terms of the lease and assumes the then outstanding mortgage balance, then the landlord shall be entitled to that portion of the purchase proceeds in excess of the then outstanding balance, accrued items, and applicable prepayment fee."

Appellee asserts that Markland did not breach its commitment because condition 20 of the agreement provided for Chrysler Realty's option to purchase; however, this provision of the commitment contained only American National's right to first refusal which was subject to Chrysler Realty's right to purchase. Neither of these rights was to become effective until the mortgage and lease were consummated. Condition 10 of the commitment agreement required that the improvements be leased to Chrysler.

The loan commitment is an agreement to lend and to borrow money to permanently finance a building. The borrower, Markland, sold the property prior to the consummation of the loan and prevented appellant from lending the money on the stated terms, thus breaching the contract. Since the evidence adduced in this hearing was undisputed, the issue of breach presented a question of law for the court. *Gulf States Equipment Co. v. Toombs*, 288 S.W.2d 203, 205 (Tex.Civ.App.—1956, writ ref., n.r.e.). The meaning of an unambiguous agreement is determined by the court as a matter of law from the language used therein. *Tower Contracting Co. v. Flores*, 157 Tex. 297, 302 S.W.2d 396 (1957). We do not reach the appellant's third point, a

great weight point concerning the first jury finding.

Points of error 4, 5 and 6 complain that the trial court gave improper instructions as to when a penalty occurs. Special Issue No. 2 and the instructions in question were submitted as follows:

"Do you find from a preponderance of the evidence that the $11,000.00 fee paid by Markland Development, Inc. was a penalty?

"You are instructed that a penalty occurs when any one of the following situations exist:

"(1) When the money paid constitutes security for the performance of the contract; or

"(2) When the money paid is disproportionate [excessive or inadequate] to the actual damages sustained; or

"(3) When performance of very different degrees of importance and value are promised and one large sum is made payable as damages for any breach whatever; or

"(4) When the amount stipulated is not a reasonable forecast of just compensation for the harm caused by the breach.

"Answer 'We do' or 'We do not'."

The jury answered "We do".

■ Appellant preserved these points for appeal by objecting to the court's charge in accordance with Rule 274 of Texas Rules of Civil Procedure and complains specifically about instructions (1), (2) and (3). We sustain these points. They constitute the main issue in this appeal.

When should a stipulated damage provision of a contract be enforced as liquidated damages, and when should enforcement be denied because it is a penalty provision? The Texas Supreme Court answered that question and stated the Texas rule in *Stewart v. Basey,* 150 Tex. 666, 245 S.W.2d 484 (1952), by citing with approval Section 339 of the Restatement of Contracts:

(1) an agreement, made in advance of breach fixing the damages therefor, is not enforceable as a contract and does not affect the damages recoverable for the breach, unless

(a) the amount so fixed is a reasonable forecast of just compensation for the harm that is caused by the breach, and

(b) the harm that is caused by the breach is one that is incapable or very difficult of accurate estimation.

■ Since this case is to be remanded, we suggest that under the evidence adduced at the last trial the instruction could have been:

You are instructed that an agreement made in advance of breach and fixing the damages for a breach of contract is considered to be a penalty when:

(a) the amount so fixed is not a reasonable forecast of just compensation for the harm that is caused by the breach, *and*

(b) the harm that is caused by the breach is not very difficult of accurate estimation.

■ Instruction (1) given by the trial court appears to have been based on this quotation: "The legal distinction between penalties and liquidated damages is that the former constitute security for the performance of the contract while the latter constitute the measure of recovery in the event of nonperformance." *Roberts v. Dehn,* 416 S.W.2d 851, 853 (Tex.Civ.App.1967, no writ), citing, 17 Tex.Jur.2d § 157, p. 223. We do not consider that this use of part of the quotation would help the jury understand what constitutes a penalty as set out in *Stewart v. Basey,* supra.

■ The second instruction allowed the jury to compare the actual damage to the stipulated liquidated damages. A finding of actual damage is only material to the reasonableness of the parties' forecast of possible harm. The mere fact that stipulated damages are in excess of actual damages does not prevent the stipulation from being lawful. *Elliott v. Henck,* 223 S.W.2d 292 (Tex.Civ.App.1949, writ ref., n.r.e.); Comment, A Functional Approach in Determining the Validity of a Liquidated Damages Clause, 30 Tex.L.Rev. 752, 764 (1952). A

jury should not base a finding of penalty solely on this instruction.

 The third instruction contained in Special Issue No. 2 allowed the jury to find a penalty if one large sum was payable for any breach when performance of very different degrees of importance was promised. In *Stewart v. Basey, supra,* the provision for stipulated damages was treated as a penalty "since the contract provided the same reparation for the breach of each and every covenant, and since it would be unreasonable *and* a violation of the principle of just compensation to enforce it as to some of them". (emphasis added). If this type of contractual provision exists, it does not make the provision a penalty unless the amount stipulated is also found to be unreasonable as it relates to any one of the possible breaches. 30 Tex.L.Rev., supra, at p. 757. Further, we find no evidence in our case to make this instruction relevant.

 Appellant's seventh point of error complains of the trial court's refusal to allow the authentication and introduction of defendant's exhibit no. 2 under the trade publication exception to the hearsay rule. The trial court sustained appellee's objection to the evidence before appellant established that the evidence was generally recognized as reliable and regularly used in a trade or specialized activity, a necessary prerequisite for its introduction. *Lewis v. Southmore Savings Ass'n,* 480 S.W.2d 180 (Tex.1972). The appellant made no bill of exceptions to show what answers would have been elicited; so no error is disclosed in the rulings. *J. Weingarten v. Brockman,* 134 Tex. 451, 135 S.W.2d 698 (1940).

Appellant's eighth point of error asserts that the jury's response to Special Issue No. 3 was contrary to the great weight of the evidence. Special Issue No. 3 was submitted as follows:

> "Do you find from a preponderance of the evidence that American National Insurance Company suffered damages as a result of the breach, if any you have found?
> "Answer: *We do not.*"

Our disposition of this case makes it unnecessary for us to rule on this point.

Reversed and remanded.