**R. C. FREEMAN, Appellant,**

v.

**SHANNON CONSTRUCTION, INC., Appellee.**

No. 8818.

Court of Civil Appeals of Texas, Amarillo.

Dec. 5, 1977.

On Motion for Rehearing Jan. 3, 1978.

Appellant's Second Motion for Rehearing Denied Jan. 30, 1978.

Wayne Bagley, Amarillo, for appellant.

Gibson, Ochsner, Adkins, Harlan & Hankins, James H. Doores, Amarillo, for appellee.

DODSON, Justice.

In this case R. C. Freeman is the appellant herein and the defendant and cross-plaintiff in the court below. Shannon Construction, Inc. is the appellee herein and the plaintiff and cross-defendant in the court below. The parties will be referred to as Freeman and Shannon.

Shannon was the general construction contractor on the Bell Tower Apartment project located in Amarillo, Texas. Shannon, as general contractor, entered into two contractual agreements with Freeman as

subcontractor for certain cement work on the project. The first agreement in the original amount of $184,034 was dated November 20, 1972 and the second agreement in the original amount of $9,750 was dated October 22, 1973. Each of the agreements provided for extras, when approved according to the terms thereof.

Freeman partially completed the work specified in the two agreements and certain approved extras thereunder. The agreement provided for periodic payments by Shannon to Freeman as the work progressed under the contracts. However, before all of the work was fully completed under the two agreements, a controversy arose between Freeman and Shannon concerning the amount of money due and owing to Freeman for the partially completed work on the project.

Shannon and Freeman were unable to resolve the controversy to the satisfaction of Freeman, so he abandoned further work on the project. Shannon completed the work under the two agreements. Then Shannon brought this action to recover the amount of $36,610.22 expended in completing the work under the two agreements. Freeman answered Shannon's action by a general denial and then brought his cross-action alleging an unpaid balance of $9,685.50 due him for work completed under the two agreements with Shannon.

The case was tried before a jury on eight special issues submitted by the court. On the verdict of the jury and other specific findings by the court, judgment was entered against Freeman in the amount of $21,704.30 with interest at the rate of nine percent per annum from the date of judgment until paid. From this judgment Freeman appeals to this court. We affirm.

Freeman brings seven points of error to this Court as follows:

Point of Error No. One: The Court erred in granting Plaintiff's [Shannon] Motion in Limine.

Point of Error No. Two: The Court erred in overruling Appellant's [Freeman] objection to Special Issue Number One for the reason that as a matter of law, upon showing of a breach by the Appellee of the contract, the law does not place a responsibility on R. C. FREEMAN to continue his work.

Point of Error No. Three: The Court erred in overruling Defendant's [Freeman] Objection on Special Issue No. Four, because the Court's Charge nowhere restricts the evidence to "charges" that are reasonable and necessary in Amarillo, Texas.

Point of Error No. Four: The Court erred in overruling Appellant's [Freeman] Objection to Special Issue Number Eight for the reason that as a matter of law, a breach has been shown by Appellee of Contract 1364 and Contract 1903, and there was thereafter no legal obligation on the Appellant to proceed. There was not pled, nor has the evidence shown consideration for a new agreement.

Point of Error No. Five: The Court erred in overruling Ground One of Appellant's [Freeman] Motion for Judgment. The Appellant was clearly within his legal rights in stopping work on the contract; and as a matter of law, the Court should have rendered judgment for Appellant notwithstanding the verdict.

Point of Error No. Six: The Court erred in admitting testimony of Michael D. Wieder on his direct examination, over the timely objection of Appellant [Freeman] that Appellee [Shannon] had spent $41,000.00 in connection with the construction of Bell Towers Apartments without laying the predicate that would show in any respect that such expenses were reasonable or necessary.

Point of Error No. Seven: The Court erred in overruling Appellant's [Freeman] Ground Number two of Appellant's Motion for Judgment, for the reason that there was no evidence to support the jury's answer to the second part of Special Issue Number Five.

In response to the special issues submitted to it by the court, the jury found as follows:

(1) That Freeman abandoned his work under the contracts in question prior to the completion of the same;

(2) That, after receiving written notice from Shannon to proceed with his work, Freeman did not return to such work within ten days and complete such work in accordance with the contracts;

(3) That Shannon terminated its contracts with Freeman and employed others to complete such abandoned work;

(4) That Shannon paid $41,000 in order to complete the work of Freeman under the contracts in question;

(5)(a) That the $41,000 amount paid to complete the contracts of Freeman was not reasonable "under the circumstances then and there existing;" (b) however, $25,000 was the reasonable and necessary amount required to complete the contracts of Freeman;

(6) That Shannon had paid Freeman $189,488.30 under the contracts in question;

(7) That no amount of money was due and owing to Freeman by Shannon on the 16th day of February, 1974, under the contracts in question; and

(8) That on or about February 15, 1974, Freeman agreed to complete the contracts in question and thereby waived any breach of such contracts prior to that time by Shannon.

■ Freeman's second point of error maintains that special issue number two, inquiring as to whether he had abandoned and refused to complete his work, should not have been submitted to the jury.

His fourth point asserts that special issue number eight, asking the jury whether he had waived any breach of the contract by Shannon, should not have been submitted to the jury.

He also complains of the overruling of his Motion for Judgment Notwithstanding the Verdict in his fifth point of error.

In each of these points Freeman relies on the alleged breach of the contract by Shannon to excuse his own non-performance. His contention rests on his claim that Shannon failed to pay $9,685.50 owed to Freeman under the contract. Such non-payment, he insists, is an absolute excuse for his own non-performance.

Freeman's objections to the charge and to the jury's response to issues one and eight are rendered of no consequence by the jury's answer to special issue number seven, which controls the question of whether Shannon breached the contract by not paying Freeman. There the jury found that Shannon owed nothing to Freeman on the date he complains that Shannon breached by not paying an amount due under the contract. Therefore, his non-performance was not excused.

Freeman neither objected to the method of submission of issue number seven, nor challenged the jury's answer to such issue in this court.

Absent a jury finding of a breach by Shannon, Freeman cannot complain that his non-performance was excused.

■ The jury found in special issue number one that Freeman abandoned his work under the contracts in question prior to completion. In *McKnight v. Renfro,* 371 S.W.2d 740, 745 (Tex.Civ.App.—Dallas 1963, writ ref'd n. r. e.) the court states that the applicable measure of damages is as follows:

When the owner, upon failure of the contractor to perform takes over the job and completes the work himself, he may recover from the contractor the excess of the reasonable and necessary cost of completion over and above the unpaid portion of the contract price. *Hillyard v. Crabtree,* 11 Tex. 264; *Gonzales College v. McHugh,* 21 Tex. 256; *American Surety Co. of N. Y. v. Lyons,* 44 Tex.Civ.App. 150, 97 S.W. 1080; *Franks v. Harkness,* Tex.Civ.App., 117 S.W. 913; *Da Moth & Rose v. Hillsboro Ind. School District,* Tex.Civ.App., 186 S.W. 437; *American Surety Co. v. Gonzales Water Power Co.,* Tex.Civ.App., 211 S.W. 251; *Standard Accident Ins. Co. of Detroit, Mich. v. Laird,* Tex.Civ.App., 81 S.W.2d 271; *Ruberoid Co. v. Scott,* Tex.Civ.App., 249 S.W.2d 256; 10 Tex.Jur.2d 69.

This same measure of damages applies to the claim of a contractor against a subcontractor for abandonment of the work on subcontracts. *See* C. McCormick, Handbook of the Law of Damages § 169 (1935). Freeman's points of error two, four and five are overruled.

Freeman complains in point of error number seven that the trial court erred in overruling his second ground for judgment notwithstanding the verdict for the reason that there was no evidence to support the jury's determination that $25,000 was the reasonable and necessary amount required to complete the contracts of Freeman with Shannon.

Freeman contends in his brief " . . . that the reasonable and necessary cost of completing the job in Amarillo, Texas, at the time in question was the amount of $7,386.00 (without credit for materials furnished and work thereon done) . . .." and his testimony at the trial was substantially to the same effect.

Cecil Gehringer was Shannon's superintendent on the job in question. Gehringer testified that when Freeman left the job the so-called building C was not complete. He said, "Inside the building the four laundry rooms were not completed; there was stairs and landings that wasn't completed." And likewise, he testified that "four laundry rooms were not complete" in building B. Also, he testified "there were seven landings and 172 steps, in both buildings, B and C, that had not been poured." Mr. Gehringer testified as to unfinished area by Freeman on Exhibit # 45 which was before the jury. He testified that the tennis court, the pool area, the pool room, the sidewalks and curbs as shown on the exhibit "had not been poured." Gehringer's testimony concerning the unfinished portions of the work under the contracts covers some eleven pages of the statement of facts.

Gehringer testified from a log made on the job at the time, that he called Freeman on many occasions from February 18, 1974 to April 2, 1974, that Freeman told him on several occasions he would return to the job; however, he never did return and complete the work.

Gehringer further testified that he tried to hire cement contractors in Amarillo and Lubbock to complete the work; however, none were available to take the job and complete it. In this connection, Freeman testified that he did not think Shannon could get anyone else to finish the job.

Michael Wieder, the secretary and treasurer of Shannon, testified that Shannon paid out $41,015 to complete the work under the contracts with Freeman. Wieder testified that the amounts paid out were as follows:

(1) $828 air fare for two persons from Cleveland, Ohio to finish the work;

(2) $9,928 for the time for these two men in Amarillo;

(3) $14,137 to Mr. Hinoyos and his crew "for work that would have been required of Mr. Freeman;"

(4) $9,964 to Crowe-Gulde, Inc. for concrete to complete the job under contract to Freeman;

(5) $4,000 for lumber to make forms, for rental of forms and for wire mesh to imbed the concrete;

(6) $885 for Shannon's labors attributable· to Freeman's contracts.

The $14,137 amount paid to Mr. Hinoyos and his crew and the $9,964 amount paid to Crowe-Gulde, Inc. were evidence to support the finding of the jury to special issue number five.

■ The jury was privileged to believe all or none of the testimony of any one witness or to accept it in part while rejecting it in another part. *Esteve Cotton Company v. Hancock,* 539 S.W.2d 145, 158 (Tex. Civ.App.—Amarillo 1976, writ ref'd n. r. e.). Also, the jury was entitled to draw reasonable inferences from the facts it found were proved. After reviewing all the evidence in the record, we cannot say, with due regard to the province of the jury, that, as a matter of law, there was no evidence of probative force to support the answer to special issue number five. Therefore, Freeman's point of error number seven is overruled.

■ In point of error number three, Freeman complains that the court erred in overruling his objection to special issue number four because the court's charge to the jury nowhere restricts the evidence to "charges" which are reasonable and necessary in Amarillo, Texas. And in point of error number six he complains that the court should have excluded the testimony of Michael Wieder to the effect that Shannon had spent $41,000 to complete the work under the two contracts in question, without Shannon laying a predicate that such expenses were reasonable and necessary.

Freeman, in his brief, in essence, contends that the contracts between himself and Shannon called for the sale of goods, and therefore the transaction is governed by the Tex.Bus. & Comm.Code. More particularly, he says § 2.713 is applicable to this case. We do not agree. The contracts called for the furnishing of services including both labor and material; however, the essence of the transaction was for services rather than the sale and passage of title to goods. *See: Goelz v. Wadley Research Institute & Blood Bank,* 350 S.W.2d 573 (Tex. Civ.App.—Dallas 1961, writ ref'd n. r. e.); *J & R Electric Division of J. O. Mory Stores, Inc. v. Skoog Construction Company,* 38 Ill. App.3d 747, 348 N.E.2d 474 (1976).

■ The testimony of Michael Wieder, an officer of Shannon, was admissible on the issue of "reasonable and necessary" cost to complete the work of Freeman by Shannon. The jury determined that the $41,000 figure was unreasonable in the first part of special issue number five, but further found that $25,000 was the reasonable and necessary amount in the second part of the same issue. This finding to the second part of special issue number five was a controlling issue under *McKnight v. Renfro, supra,* and the authorities therein cited.

Freeman's points of error three and six are overruled.

■ Freeman in his first point of error complains that the court erred in granting Shannon's Motion in Limine. The motion requested the court to instruct Freeman and his attorney "not to mention or imply in any way before the jùry, prior to such evidence having been submitted to the Court, that [Shannon] has failed to pay other creditors' bills . . ." and other matters.

The court sustained the motion; however, Freeman neither offered any such testimony outside the presence of the jury nor perfected a bill of exception by showing any such testimony. Under such circumstances, Freeman has failed to show that the ruling of the court was erroneous. *J. Weingarten, Inc. v. Brockman,* 134 Tex. 451, 135 S.W.2d 698 (1940); *American National Insurance Company v. Tri-Cities Construction, Inc.,* 551 S.W.2d 106, 110 (Tex.Civ.App. —Houston [1st Dist.] 1977, no writ); and *Bell v. Bradshaw,* 342 S.W.2d 185 (Tex.Civ. App.—Dallas 1960, no writ).

Freeman's seven points of error are overruled.

■ Freeman neither objected in the trial court nor assigned error in this court for the failure to determine the amount of approved extras on the job which should have been added to the sum of the two original contract amounts in determining the amount of the judgment against him. In the absence of such objection and assignment of error, we are unable to reach the matter.

■ Shannon brings one cross point wherein it complains that the court erred in failing to grant its motion to disregard the answers to special issue number five and failing to enter judgment for Shannon based on the answer to special issue number four because the amount paid by Shannon to complete Freeman's contracts was the proper measure of damages. We do not agree. Again, the proper measure of damages applicable to this case is set forth in *McKnight v. Renfro, supra,* and the authorities therein cited.

Shannon contends in support of its position that the measure of damages is the so-called stipulated or liquidated damage or indemnity provision which is contained in the contracts as follows:

If Subcontractor abandons his work hereunder, Contractor may give written notice to Subcontractor to proceed; and, if Subcontractor does not return to such work within ten (10) days after such notice, this Contract shall be, at Contractor's option, terminated and Contractor shall have the right to employ a different Subcontractor to complete such abandoned work and shall furthermore deduct from the amount otherwise payable to Subcontractor the amount which Contractor pays to the substituted Subcontractor for completion of such work. If Contractor pays to such substituted Subcontractor a sum which when added to payments previously made to the original Subcontractor amounts to more than the total amount to be paid by Contractor to Subcontractor under the terms hereof, Subcontractor shall be obligated to pay to Contractor and shall pay to Contractor forthwith the excess of such amount over the original contract amount, as liquidated damages, and not as a penalty.

Our Supreme Court in *Stewart v. Basey*, 150 Tex. 666, 245 S.W.2d 484, 486 (1952) held that:

An agreement, made in advance of breach fixing the damages therefor, is not enforceable as a contract and does not affect the damages recoverable for the breach, unless

(a) the amount so fixed is a reasonable forecast of just compensation for the harm that is caused by the breach, and

(b) the harm that is caused by the breach is one that is incapable or very difficult of accurate estimation.

The provision before us fails to meet either element of the test. The "amount which Contractor pays to the substituted Subcontractor for completion of such work" fails to limit the amount to "reasonable and necessary" charges therefor on the facts and circumstances existing at the time of the breach. Also, the provision fails because such damages are capable of accurate determination without difficulty under the applicable law of this state.

1. These items were further explained by addendums dated 22 January 1973 and 31 January

Shannon's cross point one is overruled.

Accordingly, the judgment of the trial court is affirmed.

## ON MOTION FOR REHEARING

DODSON, Justice.

After reviewing Appellant's Motion for Rehearing and accompanying brief, we have determined that our original opinion correctly states the applicable law in this case. However, the basic contention in the motion for rehearing merits further discussion of the application of Chapter 2 (Sales) of the Texas Uniform Commercial Code to the building contract.

■ The chapter's provisions are limited to transactions involving the sale of goods. Tex.Bus. & Comm.Code Ann. § 2.102 (1968). Most building contracts, on the other hand, involve the sale of both goods and services. In such hybrid transactions the question becomes whether the dominant factor or "essence" of the transaction is the sale of goods or services. As explained in *Bonebrake v. Cox*, 499 F.2d 951, 960 (8th Cir. 1974):

The test for inclusion or exclusion is not whether [goods and services] are mixed, but, . . . whether their predominant factor, their thrust, their purpose . . . is the rendition of service, with goods incidentally involved . . . or is a transaction of sale, with labor incidentally involved . . . ..

Shannon was the general construction contractor on the Bell Tower Apartment project located in Amarillo, Texas. Shannon, as general contractor, entered into two contractual agreements with Freeman as subcontractor for certain cement work on the project. The first contract, dated 20 November 1972, described the work and services to be performed by Freeman as follows:[1]

In accordance with the architectural and structural drawings and specifications

1973, being Exhibits P–2 and P–3 respectively, which are the original exhibits in the case.

prepared by T. R. Daniel, furnish all labor, material and equipment in order to perform the following concrete and related work.

1) Slabs, curbs, and gutters related to site work as modified by the removal of flat gutters between asphalt paving. Flat curbs to be upended to provide wheel stops.

2) Building foundations as modified with architect's approval.

3) Expansion and construction joints.

4) Concrete reinforcement including mesh for slabs.

5) Cast in place concrete for:
   a) slabs on grade
   b) bond beams
   c) slabs over metal centering
   d) balconies (exterior) formed and with adequate shoring or support

6) Curing and/or protection.

7) Embedded items.

The aforementioned work to be performed for the sum of One Hundred Eighty Four Thousand and Thirty-four Dollars ($184,034).

And the second contract dated 22 October 1973 described the work and services to be performed by Freeman as follows:

In accordance with architectural and structural drawings dated 10–14–73 by Keeva J. Kekst, Assoc., Inc. but not limited to. Furnish all labor and material to complete the following:

a) a complete concrete tennis court area approx. 120′ × 102′ × 4″ with wire mesh and base expansion joints and saw cuts as directed.

b) sidewalks and exterior concrete patio and pool area cut into 5′ squares, curbs at planted.

c) all interior concrete slabs in the rec. bldg. corridors and pool bldg.

d) curing and/or protection.

All as directed by the job superintendent. The aforementioned work to be performed for the total sum of $9,750.00.

Appellant Freeman attempts to show that the essence of his contract with Shannon Construction was the sale of over 4,815 cubic yards of cement. The bulk sale and delivery of cement is not mentioned in the contracts or supported by the record in this case. Freeman's contracts called for labor, material and equipment to perform the concrete and related work to construct and finish the concrete structures for Shannon, the general contractor. Clearly, the "predominant factor" or the "essence" of the transaction between Freeman and Shannon was the furnishing of services and performance of work required for erecting the structures in the apartment complex. Accordingly, Chapter 2 of the Texas Uniform Commercial Code does not apply.

As noted in two cases cited by appellant Freeman, the sale of bulk cement is readily distinguishable from the overriding service of forming cement into completed structures. In *S. M. Wilson & Co. v. Reeves Red-E-Mix Concrete, Inc.,* 39 Ill.App.3d 353, 350 N.E.2d 321 (1976), the court presumed the transaction was governed by the Code [2] when a subcontractor agreed to sell and deliver a specified quantity of cement. The court noted, however, that the general contractor removed the concrete from the trucks, transported it to where it would be used, poured, cured, and finished. Likewise, in *Wilson v. Daniel International Corporation,* 260 N.C. 548, 197 S.E.2d 686 (1973), a workman's compensation case, the Supreme Court of South Carolina distinguished between a sale of cement that was merely delivered and poured into the general contractor's forms and a situation in which the subcontractor went further to execute part of the construction work of the general contractor.

After considering all matters set out in Appellant's Motion for Rehearing, we adhere to our former disposition of the case. Appellant's Motion for Rehearing is overruled.

---

2. Uniform Commercial Code, Ill.Rev.Stat.1975.