FRANKLIN GRAIN & SUPPLY CO., Plaintiff and Counterdefendant-Appellant, *v.* CARL INGRAM, Defendant and Counterplaintiff-Appellee.

Fifth District   No. 76-35

Opinion filed December 29, 1976.

Joseph W. Hickman, of Benton, for appellant.

Elmer Jenkins and Jeff Troutt, both of Benton, for appellee.

Mr. JUSTICE JONES delivered the opinion of the court:

This was an action to recover the balance of the purchase price for approximately 10 tons of nitrogenous fertilizer sold and delivered to the defendant by the plaintiff. The defendant counterclaimed, alleging that

the plaintiff failed to deliver and spread the fertilizer at an agreed-upon time—or within such period of time as would permit the fertilizer to take effect on wheat planted by the defendant in the fall of 1973. The trial court held that the plaintiff was entitled to $408.50 as the balance on fertilizer delivered and spread and that the defendant was entitled to $2,936.25 as damages for reduction in yield of his wheat. The plaintiff appeals.

On December 31, 1973, defendant called at the office of the plaintiff and asked to have 10 tons of nitrogenous fertilizer spread on his wheat on that day. Plaintiff explained that this could not be done, apparently because their equipment was broken. Defendant then went ahead and purchased 10 tons of nitrogenous fertilizer, paying $1,200 down and accepting a signed receipt which said:

> "This is your receipt for a non-refundable payment of $1200 for the purchase of ten [tons] of nitrogen for delivery in the month of January, 1974, price to be adjusted on date of shipment."

The fertilizer was not spread until April 12, 1974. The defendant maintains that spreading the fertilizer this late was contrary to his agreement with the plaintiff and that as a result his yield was reduced for which he is entitled to damages. Plaintiff maintains that the written memorandum is not a contract, that there was an oral understanding, and that the fertilizer was spread and its cost computed in accordance with their oral agreement.

We are presented with the following issues. Did the trial court err in concluding that the memorandum quoted above was a complete contract between the parties? Did the court err in concluding that the parole evidence rule precluded consideration of additional or supplemental terms? Was the award for damages based on evidence of wheat yields on adjoining lands speculative?

■■ There is no question that a contract existed between plaintiff and defendant and that the payment of $1,200 and the execution of the memorandum signed by plaintiff's agent constituted such. The memorandum specified the amount paid, the quantity purchased, the particular commodity and the time of delivery. It also stated that the price was to be adjusted on the date of shipment.

The first issue which the court must settle is whether or not testimony was admissible to show that the parties in fact agreed to a variance from the specifics of this memorandum. We believe that such testimony was admissible.

First of all, there was no question about adjustment of price. The memorandum itself stated that such was to be adjusted on the date of shipment. Defendant understood this. Fertilizer was in short supply in the

spring of 1974 and the cost to suppliers moved sharply upward during the spring. Hence the proviso that the price be adjusted when the fertilizer was delivered.

The more difficult question is whether or not delivery and spreading on April 12 was contrary to the understanding of the parties. The evidence shows that after January 31 defendant asked several times to have the fertilizer delivered or when it was going to be delivered. When it finally came on April 12, the evidence shows that he accepted it and showed the plaintiff where it was to be spread. Furthermore, in defendant's own counterclaim he stated that plaintiff " * * * was to spread said fertilizer in the Month of January, 1974, *or within such period of time as would permit the fertilizer to take effect* on the crops to be planted in order to properly fertilize the crops of Defendant-Counter Plaintiff." (Emphasis added.)

In view of the fact that both parties understood that there was to be a variance from the January 31 date, and in view of the fact that the defendant accepted delivery under the contract, we do not see how the parole evidence rule can operate to preclude this essential testimony. Furthermore, we find that defendant's statement that the fertilizer was to be spread within such period of time as would permit it to take effect precludes him from maintaining that January 31 was the deadline date. In *Precision Extrusions, Inc. v. Stewart*, 36 Ill. App. 2d 30, 183 N.E.2d 547, the court said:

> " * * * allegations contained in a pleading are judicial admissions and are conclusive against the pleader provided the pleading has not been amended, abandoned, or withdrawn." (36 Ill. App. 2d 30, 50, 183 N.E.2d 547, 556.)

And in 29 Am. Jur. 2d *Evidence*, §688 (1967), it is stated that admissions in pleadings can be regarded as evidence if the pleadings are introduced at the trial at the proper time and in the proper way.

Defendant cites *Perlman v. First National Bank*, 15 Ill. App. 3d 784, 305 N.E.2d 236, for the proposition that the written memorandum was not uncertain or ambiguous and that therefore custom, usage, or parol testimony could not be used to alter its terms. But in *Perlman* a different question was involved. In that case the bank argued that for some purposes the term "calendar year" appearing in a legislative act meant 360 days and for some other purposes it meant 365. The court did not believe the legislature had this in mind when it used the phrase "calendar year."

■■ We find, therefore, that there was a contract, that the defendant understood that the price would be determined on the date of delivery, and that his acceptance of delivery was a waiver of any right he might have earlier had to maintain that January 31 was the deadline date.

The trial court found that the delivery of the fertilizer on April 12 was too late to be effective upon the crop upon which it was spread. The defendant had paid in advance the sum of $1,200 and the receipt issued by plaintiff to defendant stated that the payment was "non-refundable." Thus, it is reasonable to conclude that the defendant believed he had no choice but to accept delivery on April 12. Failure to accept could mean forfeiture of payment. An acceptance under such circumstances may be categorized as compulsory and should not preclude defendant from seeking damages for late delivery and application despite the "acceptance."

■■ Although the parties have not discussed them in their briefs we note provisions of the Uniform Commercial Code (Ill. Rev. Stat. 1973, ch. 26, par. 1—101 *et seq.*) which are seemingly applicable to the situation presented here. Section 2—601 of the Code provides that if the tender of delivery fails in any respect to conform to the agreement, the buyer may accept delivery. Section 2—607(2) of the Code provides that acceptance precludes rejection but does not impair any other remedy provided in the Code for nonconformity. Section 2—714 provides for buyer's damages for any nonconformity of tender with regard to accepted goods, including consequential damages resulting from seller's breach. The nonconformity would include the late delivery of the fertilizer. The Uniform Commercial Code Comment to this section, found in Ill. Ann. Stat., ch. 26, par. 2—714, at 574 (Smith-Hurd 1963), states:

> "The 'non-conformity' referred to in subsection (1) includes not only breaches of warranties but also any failure of the seller to perform according to his obligations under the contract. In the case of such non-conformity, the buyer is permitted to recover for his loss 'in any manner which is reasonable.' "

Section 2—715(2)(a) specifies that any consequential damages resulting from seller's breach includes:

> "[A]ny loss resulting from general or particular requirements and needs of which the seller at the time of contracting had reason to know and which could not reasonably be prevented by cover or otherwise."

The plaintiff, being in the fertilizer business, would certainly have reason to know the requirements for timely application of fertilizer and the consequences of late delivery. See *S.M. Wilson & Co. v. Reeves Red-E-Mix Concrete, Inc.,* 39 Ill. App. 3d 353, 350 N.E.2d 321.

Accordingly, we find that the trial court properly awarded defendant consequential damages for what it found to be a late delivery.

■■ Though there is some uncertainty about the evidence of loss of yield, complicated by many factors such as weather, date of fertilizing,

and other matters, we cannot say that the trial court's decision that defendant had been damaged to the extent of five bushels per acre is against the manifest weight of the evidence. Testimony of adjoining and nearby farmers regarding their use or nonuse of fertilizer and their yields furnished sufficient evidence to support the court's findings regarding damages.

Just as we find that defendant was precluded from maintaining that January 31 was the deadline date for delivery and application of the fertilizer, so we think the price to be charged defendant for the fertilizer should not be fixed as of January 31. Justice requires that the price be fixed at the same rate charged others and it appears from the record that that price was $295 a ton. We affirm the trial court's finding of damages in favor of defendant in the amount of $2,936.25 but hold that defendant is liable to the plaintiff for the difference between the $1,200 which he paid at the time the fertilizer was ordered and the price charged by the plaintiff for fertilizer as delivered to defendant on April 12, 1974. The evidence shows that 9½ tons of fertilizer was delivered at $295 a ton. The amount due from defendant would be $2,802.50; that amount reduced by the $1,200 defendant paid down leaves a net amount due plaintiff from defendant of $1,602.50. Setting off the amount due plaintiff from defendant, we enter judgment here for defendant, and against the plaintiff, in the amount of $1,333.75

Affirmed in part; modified in part; judgment rendered for defendant against plaintiff for $1,333.75, plus costs.

EBERSPACHER and KARNS, JJ., concur.