PEORIA HARBOR MARINA, Plaintiff-Appellee, *v.* WILMA PAULINE McGLASSON, Defendant-Appellant.

Third District   No. 81-371

Opinion filed March 25, 1982.

Elliott B. Young, of Peoria, for appellant.

Mark G. Zellmer, of Peoria, for appellee.

PRESIDING JUSTICE SCOTT delivered the opinion of the court:

On July 10, 1979, the plaintiff, Peoria Harbor Marina, filed a complaint against the defendant, Wilma Pauline McGlasson, in the circuit court of Peoria County. The plaintiff sought judgment on a promissory note signed by the defendant for the principal amount of $20,695, with interest thereon at 8% per annum since September 4, 1978. Following a bench trial, the plaintiff was awarded $7,607.64 plus costs of suit on May 29, 1981. The defendant appeals.

The trial consisted of testimony by the four persons present when the agreement for the sale and purchase of a boat was executed. These witnesses were the defendant, the defendant's son, Larry Teel, the plaintiff's vice-president, Lou Paulsen, and the plaintiff's salesman, Walter Herncjar. Based on their testimony, a summary of the facts can be made.

Larry Teel wanted to buy a 28-foot Chris Craft Cruiser from the plaintiff, but due to divorce proceedings, his credit standing was poor. His mother agreed to purchase the boat in her name, on her credit, and Teel would pay her. With this objective in mind, the defendant and Teel met with Paulsen and Herncjar at the marina on September 4, 1978.

During this meeting the parties agreed to a price of $19,900 for the boat, plus a sales tax of $995. Included in the sale price was a 50/50 warranty for 30 days, which meant that the seller and buyer would share equally the cost of repair on problems discovered within 30 days after the sale. The slip rental (dock space) and winter storage until April 1, 1979,

would be provided by the plaintiff free of charge. A $200 deposit was made, leaving a balance due of $20,695.

These oral terms were written on a blank form which appeared to be a bill of sale, and upon which the plaintiff's letterhead appeared at the top. Lou Paulsen signed his name and the date. The paper contained a description of the item sold, the warranty, storage and slip rental, sales tax, deposit and balance due. The defendant signed the paper. However, the defendant testified that at the time she signed the paper, she did not think it was a bill of sale.

According to the defendant and her son, there was one other term agreed upon which was not written on the sales slip. They testified that the agreement to purchase the boat was contingent upon the defendant securing a loan. If she could not obtain financing, there was to be no contract. However, when questioned as to the specifics of this alleged condition, such as what would be an acceptable interest rate, the defendant stated there were none. She claimed that she had 30 days to get a loan, or there was no agreement. In other words, according to the defendant, she had carte blanche as to what financing she would or would not accept.

The plaintiff's vice-president and salesman contradicted this testimony by stating there was no condition to the contract. They claimed that the defendant did not have a sufficient down payment to secure a retail installment contract through the plaintiff's bank, but that she would secure her own financing. They stated further that the defendant said she would get a loan by giving a second mortgage on her house.

There was contradictory testimony as to whether the defendant signed the promissory note; however, this question was not presented as an issue in this appeal and will not be considered.

The note was payable 30 days after September 4, 1978. The principal amount due was $20,695, with interest at 8% per annum.

After the papers were signed by the defendant and retained by the plaintiff, the only set of keys to the boat was given to the defendant's son. The defendant and Teel went out on the boat that day. From September 4, 1978, until the boat was stored for the winter, sometime in mid-November 1978, Larry Teel used the boat exclusively on a weekly basis. He stated he used it one to two times a week, while Herncjar and Paulsen claimed he used it three to four times a week. Teel brought friends on the boat and had personal belongings on board. The defendant went on the boat a couple of times after September 4, 1978.

The defendant tried to get financing at three banks, but she was refused because her income was not sufficient to make the monthly payments. Paulsen tried to get financing for Teel, but when that failed, he

arranged for a loan application for the defendant with the First National Bank of Chillicothe, where the plaintiff had done business. The bank also rejected the loan on December 12, 1978. In a stipulation filed by the defendant, a bank vice-president stated with some uncertainty that she had not told the defendant of the rejection when the defendant called and informed the bank she did not want to pursue a loan. The defendant and Teel informed the plaintiff, through Paulsen, that no financing was available. They considered the matter closed.

In February 1979 Larry Teel removed some of his belongings from the boat. The boat was taken out of storage in the spring, and Paulsen tried to contact the defendant and Teel but could not reach them. Paulsen then sold the business. On May 6, 1979, Larry Teel went to the marina and delivered a check for $306 and received a receipt in return. Apparently the slip rental and winter storage until April 1, 1979, would have cost $506 had the plaintiff not provided it free of charge in the contract for sale. The defendant was no longer operating under the terms of the contract, however, and attempted to pay the rental and storage fee as though she and her son had only rented, and not purchased, the boat. The $306 would be the balance due if the $200 deposit made by the defendant on September 4, 1978, were deducted. The check was never presented for payment because the plaintiff was still operating under the terms of the contract.

The boat was placed on the market for resale in June or July 1979 by the plaintiff. On October 1, 1979, the defendant was sent notice that the boat would be sold on October 8, 1979. The defendant did nothing. The boat was then sold on September 8, 1980, according to the date on a bill of sale. The evidence on when the boat was actually resold is contradictory. The transcript from the trial and the briefs of the parties refer to the date of resale as October 8, 1979. However, the bill of sale given to the resale buyer bears the date September 8, 1980. The trial judge used the date of September 8, 1980, as the date of resale when he calculated the interest due on the deficiency amount of damages. The resale price for the boat was $15,010, plus $790 commission.

On May 27, 1981, the trial court found there was a contract for the sale of the boat with no condition that financing be obtained before the parties were obligated to perform. In awarding damages to the plaintiff, the trial judge apparently relied on the provisions of section 2—706 of the Uniform Commercial Code (UCC) (Ill. Rev. Stat. 1979, ch. 26, par. 2—706), although he made no specific references to that section of the Code. The relevant provisions of the UCC, section 2—706, provide as follows:

"(1) Under the conditions stated in Section 2—703 on seller's remedies, the seller may resell the goods concerned or the undelivered balance thereof. Where the resale is made in good faith and

in a commercially reasonable manner the seller may recover the difference between the resale price and the contract price together with any incidental damages allowed under the provisions of this Article (Section 2—710), but less expenses saved in consequence of the buyer's breach.

(2) Except as otherwise provided in subsection (3) or unless otherwise agreed resale may be at public or private sale including sale by way of one or more contracts to sell or of identification to an existing contract of the seller. * * *

(3) Where the resale is at private sale the seller must give the buyer reasonable notification of his intention to resell."

In the case at bar, the trial judge calculated the damages by adding the interest on the note to the principal, amounting to $22,356, and deducting the resale price from that amount, leaving $7,346 due and owing. The trial judge then added $261.64, an amount determined by calculating the legal rate of interest (5%) on the resale deficiency ($7,346) from the date of resale until May 26, 1981. (Ill. Rev. Stat. 1979, ch. 74, par. 2.) A judgment against the defendant in the amount of $7,607.64, plus costs of suit, was entered on May 29, 1981.

■■ The parties raise several issues on appeal. First, it is necessary to determine whether this case is within the scope of article 2 of the Uniform Commercial Code (Ill. Rev. Stat. 1979, ch. 26, pars. 2—101 *et seq.*). We hold that it does come within article 2. There was a "transaction in goods" under section 2—102 (Ill. Rev. Stat. 1979, ch. 26, par. 2—102). In line with decisions in other jurisdictions, a boat is considered "goods" under section 2—105(1). (Ill. Rev. Stat. 1979, ch. 26, par. 2—105(1); *Richwagen v. Lilienthal* (Fla. App. 1980), 386 So. 2d 247; *Puamier v. Barge BT 1793* (E.D. Va. 1974), 395 F. Supp. 1019.) The plaintiff regularly sells boats; therefore, he is a merchant "who deals in goods of the kind" pursuant to section 2—104(1). Ill. Rev. Stat. 1979, ch. 26, par. 2—104(1).

■■ Having determined that the UCC governs in this case, we must decide whether the parties were bound by a contract. Whether a contract exists, its terms and the intent of the parties, are questions of fact to be determined by the trier of fact. A reviewing court may not reverse the judgment of a trial court merely because different conclusions could be drawn. (*General Grocer Co. v. Bachar* (1977), 51 Ill. App. 3d 907, 365 N.E.2d 1106.) The findings of the trial court will not be disturbed on appeal unless they are clearly contrary to the manifest weight of the evidence. *Docas v. G. A. D., Inc.* (1980), 84 Ill. App. 3d 883, 406 N.E.2d 75.

A contract for sale includes a present sale of goods, which means that a sale has been accomplished by the making of the contract. A sale consists in the passing of title from the seller to the buyer for a price. (Ill. Rev. Stat. 1979, ch. 26, par. 2—106(1).) Where delivery is to be made

without moving the goods and no documents of title are to be delivered, title passes at the time and place of contracting. Ill. Rev. Stat. 1979, ch. 26, par. 2—401(3)(b).

■■ The trial court found that there was a present sale under section 2—106(1) in the instant case, and the evidence supports that finding. The parties entered into a contract wherein the title passed from the plaintiff-seller to the defendant-buyer for a price. There was consideration to support the contract in that the defendant was receiving a boat in exchange for a promissory note and the plaintiff was receiving the note as payment for the boat. (*Ruskin v. Rodgers* (1979), 79 Ill. App. 3d 941, 399 N.E.2d 623; *Burris v. Itek Corp.* (1977), 46 Ill. App. 3d 350, 360 N.E.2d 1168.) Since the boat was in the marina where it would be docked after sale, there was no need to physically deliver it. Delivery was accomplished by giving the only set of keys and exclusive possession to the defendant's son. Nor were there any documents of title to be delivered. Therefore, title to the boat passed to the defendant at the time and place of contracting. (Ill. Rev. Stat. 1979, ch. 26, par. 2—401(3)(b).) A contract for sale was made.

The defendant contends that title had not passed to her because the plaintiff did not surrender to the Department of Conservation the certificate of number. (Ill. Rev. Stat. 1979, ch. 95½, par. 313—4.) On the date of sale, the defendant filled out a certificate of number and paid the plaintiff the $4 transfer fee. The defendant claims that this certificate is a document of title. We do not agree based on the recent addition by the legislature of sections 3A—1 through 3A—22 of article IIIA of the Boat Registration and Safety Act (Ill. Rev. Stat., 1980 Supp., ch. 95½, pars. 313A—1 through 313A—22), concerning title. These sections, effective January 1, 1981, set out the various laws pertaining to the certificate of title required under section 3A—1 of article IIIA of the Boat Registration and Safety Act (Ill. Rev. Stat., 1980 Supp., ch. 95½, par. 313A—1). That section provides:

"§3A—1. Certificate of title required. (a) Every owner of a motorboat, and sailboat over 12 feet in length, required to be numbered by this State and for which no certificate of title has been issued by the Department of Conservation shall make application to the Department of Conservation for a certificate of title either before or at the same time he next applies for issuance, transfer or renewal of a certificate of number."

■■ When the present parties entered into the contract of sale in September 1978 there was no provision in the Boat Registration and Safety Act specifically providing for title to a boat. There was only the requirement of a certificate of number. From the additions made to the Boat Registration and Safety Act concerning title, it can be inferred that a

certificate of number was not a document of title. If it were a document of title, the legislature would have had no need to add another provision on title. Nor was the new law a substitute for a certificate of number, as the law on certificates remained. Therefore, the certificate of number was not a document of title.

The defendant raises one other point in support of her claim that there was no sale. She argues that since the plaintiff did not pay the sales tax on the boat to the Illinois Department of Revenue, the plaintiff did not consider there was a final sale. Whether the plaintiff paid the sales tax is a collateral matter which will not be taken up by this court.

■■ Since the contract for sale was for the sale of goods for a price of $500 or more, the Statute of Frauds must be complied with, or the contract is not enforceable. (Ill. Rev. Stat. 1979, ch. 26, par. 2—201.) In order to satisfy this statute there must be a writing sufficient to indicate that a contract for sale was made and signed by the party against whom enforcement is sought. The bill of sale contained a description of the boat by the listing of one serial number. The memorandum also stated the other terms agreed upon by the parties: 50/50 warranty and slip rental and storage. The defendant signed the memorandum. There was a date present, and the plaintiff's vice-president also signed. The bill of sale was sufficient to satisfy the Statute of Frauds. Ill. Rev. Stat. 1979, ch. 26, par. 2—201(1); *Franklin Grain & Supply Co. v. Ingram* (1976), 44 Ill. App. 3d 740, 358 N.E.2d 922.

■■ The defendant alleges that there was another term or condition agreed to by the parties which was not written into the memorandum. She claims that if she could not obtain financing, she was not bound to perform under the contract. The defendant incorrectly argues that there was a condition subsequent to the contract. If there existed a term requiring the defendant to secure a loan before she was obligated to perform, it would have been a condition precedent. A condition precedent is one which must be performed before a contract becomes effective or which is to be performed by the one party to an existing contract before the other party is obligated. *Docas v. G. A. D., Inc.* (1980), 84 Ill. App. 3d 883, 406 N.E.2d 75.

■■ The question of a condition precedent not written into the final agreement brings us to the parol evidence rule as found in section 2—202 of the UCC (Ill. Rev. Stat. 1979, ch. 26, par. 2—202). This section provides that a writing intended by the parties as a final expression of their agreement may not be contradicted by evidence of any prior agreement or contemporaneous oral agreement. However, the writing may be explained or supplemented by evidence of consistent additional terms, unless the court makes the determination that the writing was intended also as a complete and exclusive statement of their terms. It is the trial court that decides

whether the writing was to be the final expression of the parties' agreement. If the trial court decides thát it was, contradictory parol evidence should be precluded. *Luria Brothers & Co. v. Pielet Brothers Scrap Iron & Metal, Inc.* (7th Cir. 1979), 600 F.2d 103.

In the instant case the trial court admitted parol evidence on the issue of whether a condition precedent existed. Apparently, the trial court thought the writing was not the final expression of the parties' agreement. After hearing the testimony of the people involved and examining the exhibits, it found that there was no condition precedent to secure financing.

The trial court's determination that no condition precedent existed will not be disturbed on appeal unless contrary to the law or against the manifest weight of the evidence. The fact that there were no details or requirements to obtain financing placed upon the defendant and that all other terms discussed between the parties were written on the bill of sale supports the trial judge's finding.

The trial court determined that since no condition precedent existed, the defendant was bound by the contract she made. The defendant had a legal obligation to pay on the note, but she did not perform. The defendant accepted the boat and then, a few months later, she wrongfully revoked acceptance. (Ill. Rev. Stat. 1979, ch. 26, par. 2—703.) She never paid the note and hence breached the contract.

When a buyer wrongfully revokes acceptance, the seller may resell the "goods" at a private sale. He must give the buyer reasonable notification of his intention to resell. After resale the seller may sue for damages which are determined by the difference between the resale and the contract price. The seller may also recover any incidental damages less expenses saved in consequence of the buyer's breach. Ill. Rev. Stat. 1979, ch. 26, par. 2—706.

The plaintiff did resell the boat, and did the same in good faith and in a commercially reasonable manner. Ill. Rev. Stat. 1979, ch. 26, par. 2—706.

Damages were determined by adding the interest of 8% per annum to the principal sum on the note of $20,695. The trial court allowed one year of interest in the amount of $1,656, calculated from the date of the note to the date of notice of resale. By the notice of resale, the plaintiff showed its intention to proceed under the UCC-Sales' remedies so that interest only accrued to that time. The trial court then subtracted the resale price of $15,010, leaving a balance of $7,346 due the plaintiff. The plaintiff was entitled to interest on this deficiency amount under section 2 of the Interest Act (Ill. Rev. Stat. 1979, ch. 74, par. 2). (*Servbest Foods, Inc v. Emessee Industries, Inc.* (1980), 82 Ill. App. 3d 662, 403 N.E.2d 1.) This

amount came to $261.64 assessed for the period between date of resale and May 26, 1981, when the trial court accepted the plaintiff's response to the defendant's brief of the law and facts. A judgment against the defendant for $7,607.64, plus costs of suit, was entered May 29, 1981.

The actual resale price of the boat was $15,800, but $790 was a commission paid to Wharf Harbor Marina, which sold the boat for the plaintiff. The commission is not counted as part of the resale amount because it is considered incidental damages under section 2—710. (Ill. Rev. Stat. 1979, ch. 26, par. 2—710.) The defendant is liable for the commission.

■■ Finally, the defendant raised the issue that the plaintiff's complaint stated a cause of action on the note, while the evidence at trial and the judgment reflected an action under the UCC. A trial court has the right to render findings on the issues which have been formed by the record of the trial, even if they were not formally raised in the pleadings. An objection that an issue was not raised in the pleadings may be waived by the conduct of the parties at trial. *Schwarzbach v. City of Highland Park* (1980), 82 Ill. App. 3d 807, 403 N.E.2d 102.

During the trial the defendant objected on one occasion that the UCC did not apply in the case. However, the defendant did not object on the ground that the UCC was not properly pleaded. Testimony concerning the resale and remedy under the UCC was admitted. Indeed, the defendant's affirmative defense raised the issue of an improper sale. The defendant's brief of law and facts rely on the UCC. The trial court properly determined damages in accordance with proof at trial.

Based on the foregoing reasons, the judgment of the circuit court of Peoria County is affirmed.

Affirmed.

BARRY and HEIPLE, JJ., concur.