694 P.2d 1351

**ELEPHANT BUTTE RESORT MARINA, INC., a New Mexico Corporation, Plaintiff-Appellee,**

v.

**Jim WOOLDRIDGE, Defendant-Appellant.**

**No. 15073.**

Supreme Court of New Mexico.

Feb. 6, 1985.

Charles E. Hawthorne, Ruidoso, for defendant-appellant.

Leslie C. Smith, Truth or Consequences, for plaintiff-appellee.

## OPINION

SOSA, Senior Justice.

This is a contract dispute arising out of the purchase of a boat by defendant Jim Wooldridge (Wooldridge) from Elephant Butte Resort Marina, Inc. (Marina). Wooldridge, the buyer, attempted to rescind the contract. The seller, Marina, objected and brought suit for the amount owing on the contract. The trial court granted a set-off of $4000.00 and awarded Marina a judgment of $596.40 owed on a prior debt. The $596.40 is not in dispute. We affirm.

Arguments made by Wooldridge on appeal are: (1) the trial court erred in failing to find that the terms of payment were not a condition precedent to buyer's performance; (2) the trial court erred in concluding buyer had waived the condition precedent; and (3) it was error to allow Marina to recover the amount of the depreciated value of the boat because of seller's failure to mitigate the damages.

Wooldridge, a businessman from Ruidoso and a customer of Marina for several years, was interested in purchasing a certain new boat. After testing the boat, Wooldridge signed a handwritten contract to purchase it. The contract provided for the sale of a new boat, motor and trailer for the sum of $21,855.00, less a $7,355.00 trade-in allowance on his old boat. The addition of a tax charge brought the amount due on the boat to $14,980.00. The price included a full year guarantee on the boat, motor, parts and labor. Three life jackets and skis were added at no charge, but other boating equipment was listed separately on the back of the contract for the amount of $366.13. An outstanding indebtedness in the amount of $660.88, owed to Marina by Wooldridge, was added to the back of the contract. The contract thus involved a total sum of $16,007.01.

The financing term in the contract is set out on the front of the contract immediately below the cost of the boat and equipment. The buyer's signature follows the financing term which states:

Set balance up for 1 [one] year financing with $1,000.00 payments due 11/15/82, 2/18/83, 5/15/83, 7/15/83 & 8/15/83. Balance refinance[d] for another year or may pay off. J. Wooldridge [signature].

After the contract was signed, Wooldridge transferred his personal property from the old to the new boat and took possession of the new boat, using it over a period of four weekends. The old boat was left with Marina and sold by it.

At trial, there were disputed facts concerning the financing terms. A bank officer at Western Bank in Truth or Consequences (Bank), testified that after being contacted by Marina, she obtained and verified by telephone the credit information for a loan application from Wooldridge's office. The Bank's computer was unable to accommodate the irregular financing payment schedule set forth in the contract. However, the Bank was willing to finance the purchase in a similar manner on an annual basis with Wooldridge paying as follows: $6,373.13 on the *principal* for the first year; *interest* on the loan; and insurance. Further, it was agreed that after one year the remaining $10,000 balance would be amortized. The Bank required $4000.00 more to be paid by the end of the first year than the original contract.

The original calculation, made on the front of the handwritten contract, was based on the cost of the boat and extra equipment. It did not include the money Wooldridge owed Marina on an open account. The increased cost computed by the Bank was caused by the addition of the prior account, insurance and interest on the loan.

The promissory note from the Bank stated the following financing terms:

| *Annual Percentage Rate:*<br>(The cost of my credit at a yearly rate.) | 16.50% |
|---|---|
| *Finance Charge:*<br>(The dollar amount the credit will cost me.) | $2,739.87 |
| *Amount Financed:*<br>(The amount of credit provided to me.) | $16,605.27 |
| *Total Payments:*<br>(The amount I will have paid when I make all the scheduled payments.) | $19,345.14 |

The payment schedule on the note indicates one payment in the amount of $19,345.14, was due August 25, 1983. Testimony at trial agreed with the face of the note which stated, "[p]rincipal balance to be reduced down to $10,000.00 by maturity [August 25, 1983]." Wooldridge agreed in the original handwritten contract to reduce the principal on the boat purchase to approximately that same amount, $10,346.13, at the end of the first year.

In testimony the Bank officer stated: [I]n conversation [on the telephone] it was agreed that if we just put the stipulation that the balance be paid down to $10,000.00 by maturity, that that was acceptable to us and to him.

Testimony indicates the Bank understood the oral agreement to these terms as an acceptance of them. The Bank approved the financing documents and forwarded them to Wooldridge. He neither signed nor returned them.

Approximately four weeks after signing the original purchase agreement and having used the new boat, Wooldridge forwarded a letter to Marina in which he attempted to "cancel" the contract.

Wooldridge claims that under the contract he signed with Marina, he agreed to pay only a total of $5,000.00 in five separate installments the first year. He asserts he did not agree in the original contract to the financing plan provided by the Bank, requiring a $9,000.00 payment the first year.

The trial court made the following conclusions: there was a valid contract that was wrongfully breached by Wooldridge; the financing arrangements, although not identical to those written in the original

contract, had been agreed to between the Bank and Wooldridge and were valid; this agreement with the Bank created an estoppel by waiver to the objections of Wooldridge to a wrongful contract modification; the loss suffered by Marina due to the depreciation of the "new" boat by its becoming "used" was offset by the gain recovered by the sale of the trade-in boat; and finally, Wooldridge still owed Marina the sum of $596.00 on the open account.

**Uniform Commercial Code**

■ A boat is considered "goods" within the Uniform Commercial Code. NMSA 1978, §§ 55–2–102 and 55–2–105(1); *Peoria Harbor Marina v. McGlasson*, 105 Ill. App.3d 723, 61 Ill.Dec. 431, 434 N.E.2d 786 (1982); *Richwagen v. Lilienthal*, 386 So.2d 247 (Fla.App.1980); *Hatley v. Frey*, 145 Ga.App. 658, 244 S.E.2d 604 (1978). This being a contract for goods over the amount of $500.00, it falls squarely within the Uniform Commercial Code (UCC), NMSA 1978, Sections 55–1–101 to 55–2–725 (Orig.Pamp. and Cum.Supp.1984).

**a) Enforceable Contract**

Marina alleged the existence of a contract between the parties for the purchase of the new boat. Wooldridge admitted in the pleadings the existence of the contract but raised affirmative defenses.

The contract meets the requirements of an enforceable contract for the sale of goods over $500, in that (1) there is a writing which includes a quantity term, and (2) the contract is signed by Wooldridge, the party against whom enforcement is sought. NMSA 1978, § 55–2–201(1).

■ The trial court made findings that Wooldridge gave Marina control over the trade-in boat and took total possession of the new boat, using it for one month before attempting to rescind the contract. New Mexico courts have addressed the issue of the acceptance of a contract by stating:

A buyer of goods who, after having a reasonable opportunity to inspect them and with full knowledge of any defect in them, makes further payments, *performs acts of dominion*, or other acts inconsistent with any intention to rescind, may be deemed to have accepted the goods or ratified the sale.

*O'Shea v. Hatch*, 97 N.M. 409, 413, 640 P.2d 515, 519 (Ct.App.1982) (emphasis added). A contract is enforceable if the goods are *received and accepted*, even if all aspects of the Statute of Frauds are not followed. NMSA 1978, § 55–2–201(3)(c); *see also Bowlin's, Inc. v. Ramsey Oil Co.*, 99 N.M. 660 at 671, 662 P.2d 661 at 672 (Ct.App.), *cert. denied*, 99 N.M. 644, 662 P.2d 645 (1983) (discussing enforceable contracts under Section 55–2–201(3)(b)(c)).

■ Contract formation can be by conduct. NMSA 1978, § 55–2–204. Here, in addition to the written agreement, the act of Wooldridge in receiving and accepting the goods offered shows formation of a contract by conduct. *Trujillo v. Glen Falls Insurance Co.*, 88 N.M. 279, 540 P.2d 209 (1975).

**b) Condition Precedent**

Wooldridge contends that the terms of payment in the original contract were a condition precedent to his performance as a buyer. Marina argues there is no condition precedent, but even if one did exist, the actions of Wooldridge constituted a waiver and estoppel.

■ In a contract, a condition precedent is a condition or right which must be met before the contract is formed. *Wyrsch v. Milke*, 92 N.M. 217, 585 P.2d 1098 (Ct.App. 1978). Concerning the waiver of a condition in a contract we have stated, "[the] waiver of an express contractual condition may be *implied in the conduct* of the parties." *Shaeffer v. Kelton*, 95 N.M. 182, 186, 619 P.2d 1226, 1230 (1980) (emphasis added); *see also Hittson v. Chicago, R.I. & P. Ry. Co.*, 43 N.M. 122, 86 P.2d 1037 (1939); NMSA 1978, § 55–1–103 (principles of common law and equity supplement the UCC).

■ We recognize that a contracting party may repudiate his performance of the contract if the satisfaction of a condition precedent as to financing is not met. *Enerdyne Corp. v. Wm. Lyon Development*

*Co.*, 488 F.2d 1237 (10th Cir.1973). This is not, however, applicable to this case because Wooldridge by his own conduct of accepting and using the boat formed the contract, waiving any argument as to the possibility of a remaining condition precedent to his performance as a buyer. Therefore, he is estopped from raising the issue. *See* NMSA 1978, § 55–1–103.

### c) Supplementing Terms

The first two issues on appeal concern the financing clause. The original contract called for five payments of one thousand dollars each, with the principal being reduced to $10,000 at the end of one year. Testimony of the Bank officer and the financing documents in the record show that the Bank would reduce the amount of the loan to $10,000 at the end of the first year. The conflict evolved when the Bank added *interest* to the amount loaned. The original contract did not mention interest in the financing clause.

The court found the following: that Marina had agreed to help Wooldridge obtain financing, but made no warranty that such financing would be available; that although buyer Wooldridge did not receive financing exactly as set forth in the contract, he did agree with the Bank to alternate financing; the financing was approved by the Bank, and the terms of this financing were agreed to by Wooldridge; and that Wooldridge made a salary of $136,000 per year, was in the contracting business, and was familiar with financing and contracts in the business world.

To resolve conflicts over the missing or unclear terms, the UCC allows substitution of a price or financing term by "using commercial judgment or usage of trade." NMSA 1978, § 55–2–723(2). *See also* NMSA 1978, § 55–2–202 (terms may be explained or supplemented); *Major v. Bishop*, 462 F.2d 1277 (10th Cir.1972) (consideration of custom and usage in the trade under § 55–2–205); *Bowlin's*, 99 N.M. at 671, 662 P.2d at 672 (Ct.App.1983). The only term that cannot be supplied by the court is the quantity term. NMSA 1978, § 55–2–201.

A contract will not fail for indefiniteness even if one or more terms are left open, if the parties' intent to contract is shown. NMSA 1978, § 55–2–204(3). One commentator states that terms as to the *financing* of goods are considered consistent additional terms in a writing which states the purchase price. *2 R. Anderson, Anderson on the Uniform Commercial Code*, § 2–204.-41(e) at 162, (3d ed. 1982).

New Mexico courts have stated that under Section 55–2–202, parol evidence may be admitted to explain, qualify, add to or subtract from an agreement. *State ex rel. Nichols v. Safeco Ins. Co.*, 100 N.M. 440, 671 P.2d 1151 (Ct.App.1983); *see also McDown v. Wilson*, 426 S.W.2d 112 (Mo. App.1968) (parol evidence used to explain financing terms). Parol evidence is not admissible if it changes the basic meaning of the contract or produces an agreement wholly different or inconsistent with the written agreement. *Nichols.*

Professors J. White and R. Summers, in their *Handbook Of The Law Under The Uniform Commercial Code*, comment on the use of parol or extrinsic evidence to explain a contract. They state that a trial judge may exclude oral evidence of terms, such as the interest term here, that are extrinsic to those in the writing,

> *if* he finds that the parties intended the writing to be a *complete and exclusive* statement of the terms of the agreement (*unless* it be evidence of course of dealing, usage of trade, or course of performance introduced only to *explain or supplement* the writing). Code and comments both state that the *question of completeness and exclusivity is for the judge.*

*J. White and R. Summers, Handbook Of The Law Under The Uniform Commercial Code*, § 2–9 at 77 (2d ed. 1980). (Emphasis added). *See also Peoria Harbor Marina v. McGlasson*, 105 Ill.App.3d 723, 61 Ill. Dec. 431, 434 N.E.2d 786 (1982) (parol evidence admitted to determine if a condition precedent existed as to financing a boat);

*Hatley v. Frey*, 145 Ga.App. 658, 244 S.E.2d 604 (1978) (parol evidence admitted concerning payment on a boat).

■ In the instant case, the trial court apparently did not find this contract in its original state to be complete and exclusive. *See Peoria Harbor*, 105 Ill.App.3d at 729, 61 Ill.Dec. at 437, 434 N.E.2d at 792. The Bank officer's testimony explaining its agreement with Wooldridge for the financing of the boat did not change the basic contract between Wooldridge and Marina for the purchase of the boat. Therefore, it was proper for the trial court to admit the evidence and to find that the Bank's financing terms were agreeable to the parties. NMSA 1978, §§ 55–2–202, 55–2–204.

#### d) Revocation of Acceptance

■ The court found that on September 3, 1982 Wooldridge attempted to rescind the contract but "at the time he signed the aforesaid agreement, he knew that it was a contract." The UCC provides that a buyer in Wooldridge's position may revoke his acceptance if "*nonconformity* substantially impairs its value to him if he has accepted it". NMSA 1978, § 55–2–608(1) (emphasis added). Here, nonconformity of the product is not an issue on appeal. Therefore, Wooldridge had no grounds for revocation of acceptance under Section 55–2–608(1).

#### e) Modification

Once the existence of a contract is established, it can be modified by the conduct of the parties. NMSA 1978, § 55–2–207(3); *Dorton v. Collins & Aikman Corp.*, 453 F.2d 1161, 1166 (6th Cir.1972). Additionally, under Section 2–209(4) a contract may be modified by conduct, thus waiving the need for a written modification. *See Double-E Sportswear Corp. v. Girard Trust Bank*, 488 F.2d 292 (3d Cir.1973); *Federal Express Corp. v. Pan American World Airways, Inc.*, 623 F.2d 1297 (8th Cir.1980); *see generally* J. White and R. Summers § 1–5 at 42–9 (a discussion of Section 2–209(4), estoppel by waiver in contract modification).

■ Here, Wooldridge's agreement with the Bank concerning financing was conduct waiving the need for a written contract modification. Wooldridge's claim that he did not agree to Bank financing does not square with the facts herein. Evidence was properly presented concerning Wooldridge's dealings with the Bank. *See* NMSA 1978, § 55–2–202. The trial court found Wooldridge agreed to the alternate financing, thus the contract was modified as to the financing.

In New Mexico, it has been established that when the trial court's finding of facts are supported by substantial evidence, they will not be disturbed on appeal. *Boone v. Boone*, 90 N.M. 466, 565 P.2d 337 (1977). Substantial evidence means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Toltec International, Inc., v. Village of Ruidoso*, 95 N.M. 82, 84, 619 P.2d 186, 188 (1980). Our purpose on appeal is to "review to correct an erroneous result," *O'Shea v. Hatch*, 97 N.M. 409, 414, 640 P.2d 515, 520 (1982), not to reweigh the evidence. *Toltec.* There was substantial evidence under *Toltec* to support the court's findings.

#### f) Conclusions Regarding the Contract

We conclude that under the provisions of the UCC: (1) there was sufficient evidence for the trial court to find an enforceable contract; (2) the possibility of a condition precedent was waived by the acts of Wooldridge in accepting and using the boat; (3) the evidence explaining the financing arrangement was properly considered by the court; (4) the financing arrangement in the original contract was sufficiently similar to that provided by the Bank so that it did not alter the agreement; (5) there was sufficient evidence for the trial court to find that financing terms were agreed upon between the Bank and Wooldridge and became a part of the contract; and (6) the contract was supplemented in a commercially reasonable manner. *See* §§ 55–2–201, 55–2–202, 55–2–207(3), 55–2–209(4).

**Damages**

**a) Mitigation**

Wooldridge raises the question of whether Marina properly mitigated its damages. The boat was returned to Marina, but Marina did not attempt to sell the boat in the seven months prior to trial. Wooldridge asserts that even if the contract is enforceable, he owes Marina no damages because Marina could have sold the new boat and covered their loss.

Marina's position is that the damages were due to depreciation of the boat *prior to repudiation* and that these damages were caused by its *change in status* from "new" to "used" goods during its month of use. Marina asserts that this "used" condition of the boat caused a $4,000.00 loss to Marina.

The law in New Mexico is clear that in a breach of contract, the non-defaulting party has a duty to use "reasonable diligence" to mitigate damages. *Pillsbury v. Blumenthal*, 58 N.M. 422, 272 P.2d 326 (1954). New Mexico uses the "commercially reasonable" standard for resale of goods. *Deaton, Inc. v. Aeroglide Corp.*, 99 N.M. 253, 657 P.2d 109 (1982); *see generally J. White and R. Summers*, §§ 6–7 at 250–2; 7–14 at 290–3; 10–4 at 295–6 ("commercially reasonable" standard in mitigation of damages).

There are no facts before us that would indicate that Marina should have anticipated the breach *prior* to the September 3, 1982 letter of repudiation. *See* NMSA 1978, § 55–2–610. Therefore, the duty to mitigate damages arose *after* Marina was notified in the letter of the repudiation. *See J. White and R. Summer*, § 7–14 at 289–93. Only those damages that occurred *after* September 3 were subject to the duty to mitigate. The loss in value of the boat due to its "used" condition occurred *before* the attempted repudiation letter. Accordingly, the boat's "used" value was a proper damage for the court to consider, and was not subject to the duty to mitigate.

**b) Measure of Damages**

The UCC allows a seller damages caused by repudiation. NMSA 1978, § 55–2–708. When the court has sufficient evidence before it, it can make findings on damages. *See Deaton; see generally J. White and R. Summers*, §§ 7–7 to 7–13 (seller's damages). Here the court made findings that included, *inter alia*, the difference in the market price of the boat at the time of contract and the time of repudiation; Marina's lost profits; incidental damages such as storage and insurance, and the $1700.00 cost to Marina to "floorplan" the boat from the time of repudiation to the time of trial. NMSA 1978, §§ 55–2–708, 55–2–710, 55–2–723; *see generally J. White and R. Summers*, § 7–7 at 268–73 (damages for repudiation or nonacceptance). The trial court found that the cash worth of the boat "new" was $19,000.00 and "used" was $15,000.00, a difference of $4,000.00. The cash value of the trade-in boat was found to be $4,000.00. The court had sufficient evidence before it, under *Toltec*, to support its findings relating to mitigation of damages and the alleged delay in resale. The trial court correctly measured and set off the damages with expenses recovered.

This cause of action is affirmed on all issues.

IT IS SO ORDERED.

FEDERICI, C.J., and WALTERS, J., concur.