**SNACI, S.R.L., an Italian Corp.,
Plaintiff-Appellee,**

v.

**ILLINOIS FOUNDATION SEEDS, INC.,
an Illinois Corporation,
Defendant-Appellant.**

Nos. 86–1876, 86–1939.

United States Court of Appeals,
Seventh Circuit.

Argued Feb. 11, 1987.

Decided Sept. 16, 1987.

Rehearing Denied Oct. 21, 1987.

Earl L. Vuagniaux, Edwardsville, Ill., for defendant-appellant.

Reuben A. Bernick, Rudnick & Wolfe, Chicago, Ill., for plaintiff-appellee.

Before WOOD, COFFEY, and RIPPLE, Circuit Judges.

RIPPLE, Circuit Judge.

Appellant, Illinois Foundation Seeds, Inc. (IFSI), appeals from a judgment entered against it, and in favor of SNACI, on a breach of contract claim in the district court. SNACI cross-appeals from the district court's dismissal of its claims for tortious inducement to breach a contract and conspiracy to breach a contract. We affirm the judgment of the district court on both claims.

I

Background

A. *Facts*

SNACI is an Italian corporation that maintains its principal place of business in Bologna, Italy. It is in the business of importing strains of hybrid corn seed into Italy and reselling it. IFSI is an Illinois Corporation. Its principal place of business is near Champaign, Illinois. It develops and grows hybrid corn seed for sale in the United States and abroad. Agreed Pretrial Statement ¶ 1, at 1; Appellant's App. at A32.

After experimenting with IFSI's varities of corn seed in the years 1973 and 1974, SNACI bought corn seed from IFSI from 1975 through 1979. During this time, as noted by the district court, the parties communicated by telex, mail and telephone. *SNACI, s.r.l. v. Illinois Foundation Seeds, Inc.*, No. 82–2043, mem. op. at 2 (C.D.Ill. Mar. 21, 1986); R.78a at 2 [hereinafter Mem. op.]. Typically, according to the district court, the parties would discuss SNACI's needs for the coming year for each type of corn seed. After such discussions, IFSI would contract with growers to obtain the needed corn seed, and SNACI would then enter into resale agreements

with its customers in Italy. Finally, noted the district court, at some point during the year, the details of the agreement were embodied in a document signed by both parties.

In 1980, the communications between the parties began with a March 5 telex from IFSI to SNACI requesting that SNACI indicate the quantities of the various types of corn seed it would need for 1980. SNACI responded with a cable specifying quantities of corn seed for each of five varieties of corn seed with both a firm requirement and an optional requirement as to each variety. The cable specified that the seed was to be graded, treated and bagged in ten kilogram units. On April 15, 1980, IFSI responded by setting forth the prices for the amounts required by SNACI. This cable provided that "contract will follow." *Id.* at 3.

On April 21, 1980, IFSI's manager, Mr. Cochran, prepared a "Hybrid Seed Corn Production and Purchase Agreement." This document named the parties, set forth the quantities (both firm and optional) and the prices as indicated by the earlier telexes between the parties. It further provided that the seed was to be graded, treated and bagged in ten kilogram units at the quoted prices. Moreover, this document provided a germination rate, the date of payment and a provision for interest if payment were late. Finally, a proviso was added protecting IFSI from responsibility in the event of "crop failure and/or any other contingencies beyond their control." *Id.* at 4 (quoting Plaintiff's Ex. 4). This document was mailed to SNACI. It was never returned to IFSI.

In early May 1980, Mr. Cochran and Mr. Ingersoll, IFSI's vice president, traveled to Italy to meet with Mr. Rani, SNACI's president, and Mr. Geminiani, a member of SNACI's board of directors, to "negotiate a settlement of a dispute between the parties which had arisen under their 1979 contract.... The corn seed had not had the germination rate required by the 1979 contract." *Id.* at 5. The parties eventually settled the dispute.

According to Mr. Geminiani, the 1980 contract was discussed during the May 1980 meetings. Mr. Ingersoll and Mr. Cochran both denied that "any such discussion took place," *id.*, even though, on May 20, 1980, Mr. Cochran had written a letter to SNACI, summarizing the agreements that the parties had entered into during the meeting in Italy, which stated: "The following items discussed May 9, 1980, should enable shipment to be completed successfully during 1980–1981." *Id.* at 6 (quoting Plaintiff's Ex. 5). A list of five items pertaining to the shipping of corn seed to SNACI followed this statement.

In June 1980, Mr. Geminiani and Mr. Rani exchanged memoranda that discussed the dissolution of SNACI and the starting of two new companies, one which would sell corn seed and the other which would sell fertilizer. According to these memoranda, Mr. Rani would own 80% of the new corn seed business and 20% of the new fertilizer business, while Mr. Geminiani would own 80% of the new fertilizer business and 20% of the new corn seed business.

On July 2, 1980, Mr. Rani and a Mr. Rettori traveled to Champaign to meet with IFSI representatives regarding IFSI's agreement to sell corn seed to SNACI in 1980. During these meetings, Mr. Rani informed Mr. Cochran that SNACI was going to be dissolved and he showed Mr. Cochran copies of the memoranda that discussed the dissolution. At this time, according to the district court, Mr. Rani also informed Mr. Cochran that he was going to form a new company, American Seeds Italia, "that Rettori was a representative of American Seeds Italia and that the new company would be pleased to do business with IFSI." *Id.* at 7.

On July 26, 1980, IFSI sent a telex to SNACI that repealed the proposed agreement mailed to SNACI on April 21, 1980. On July 30, SNACI responded, by telex, that it had already accepted the contract and had confirmed it during the visit of Mr. Cochran and Mr. Ingersoll to Bologna. SNACI also indicated that it had already expended various sums in reliance on the receipt of the corn seed from IFSI. More-

over, SNACI indicated that the firm was represented solely by Mr. Geminiani. On August 1, 1980, IFSI responded by stating that it was entitled to repeal its proposal under Italian law. SNACI sent other telexes and a letter to IFSI indicating its desire to follow through with the purchase of the corn seed from IFSI. On August 4, 1980, IFSI entered into an agreement to sell corn seed to American Seeds Italia. Plaintiff's Ex. 14. As the district court noted, Mr. Cochran claimed that the telex had been sent to SNACI based on instructions received from Mr. Rani.

Because it could not obtain corn seed from IFSI, SNACI purchased seed from Corn States International. As a result of having to go through another supplier, SNACI argued, and the district court found, that it had suffered damages. The amount of these damages is not disputed.

### B. *Contentions of the Parties*

At the center of the parties' dispute is the question of whether the "Hybrid Seed Corn Production and Purchase Agreement" was "the contract" between the parties, or whether this document was simply intended to memorialize the agreement entered into by the parties through the communications noted above. SNACI argues that the document was intended only to memorialize the agreement that the parties had already reached, and that the circumstances surrounding the negotiations in 1980, as well as the negotiations between the parties in prior years, support this conclusion. IFSI argues that the parties dealt with one another on the express condition that there would be no binding agreement unless and until such agreement had been reduced to a writing signed by both parties.

### II

### Analysis

### A. *Standard of Review*

As noted earlier, the main contention in this litigation is whether the parties entered into a contract. Under Illinois law, which governs this case,[1] whether a con-

tract exists is a question of fact to be determined by the trier of fact. *Peoria Harbor Marina v. McGlasson*, 105 Ill. App.3d 723, 61 Ill.Dec. 431, 435, 434 N.E.2d 786, 790 (1982). As this court noted in *Gianukos v. Loeb Rhoades & Co.*, 822 F.2d 648 (7th Cir.1987):

> On appeal, we cannot set aside a district court's findings of fact unless we conclude those findings are clearly erroneous. Fed.R.Civ.P. 52(a); *Scandia Down Corp. v. Euroquilt, Inc.*, 772 F.2d 1423, 1428 (7th Cir.1985) ("The clearly erroneous rule is based in substantial measure on a belief that because appellate courts are never in a better position than the district court, and often are in a worse one, a substitution of judgment would increase the randomness of the process without increasing accuracy...."), *cert. denied* [475 U.S. 1147], 106 S.Ct. 1801 [90 L.Ed.2d 346] (1986). And we can only draw the conclusion that a finding of fact is clearly erroneous if we are left " 'with the definite and firm conviction that a mistake has been committed.' " *Anderson v. Bessemer City*, 470 U.S. 564, 573 [105 S.Ct. 1504, 1511, 84 L.Ed.2d 518] (1985) (quoting *United States v. United States Gypsum Company*, 333 U.S. 364, 395 [68 S.Ct. 525, 542, 92 L.Ed. 746] (1948)).

*Id.* at 652; *see Graphic Sales, Inc. v. Sperry Univac Div.*, 824 F.2d 576, 580–581 (7th Cir.1987). Moreover, in *Gianukos*, the court noted that factual findings based on credibility determinations are especially to be accorded great weight. *Gianukos*, at 652.

### B. *Discussion*

IFSI argues that the district court's finding that a contract was entered into by the parties is clearly erroneous. It supports this argument by citing various events that occurred during the negotiation period of the contract to show that the parties did not intend to be bound until their agreement was reduced to writing. It argues that, if the district court had properly resolved these factual issues, its ultimate

---

1. Because the parties agree that Illinois law applies to this case and because that choice of law is reasonable, this court will follow Illinois law.

*See Marmon Group, Inc. v. Rexnord, Inc.*, 822 F.2d 31, 34 n. 2 (7th Cir.1987).

finding would have been that no contract was intended. Finally, IFSI contends that any offer that was actually made had been revoked prior to acceptance.

As noted previously, IFSI's burden in challenging the district court's findings is a strict one. As the Court stated in *Anderson v. City of Bessemer City:*

> Although the meaning of the phrase clearly erroneous is not immediately apparent, ... the reviewing court oversteps the bounds of its duty under Rule 52 if it undertakes to duplicate the role of the lower court. "In applying the clearly erroneous standard to the findings of a district court sitting without a jury, appellate courts must constantly have in mind that their function is not to decide factual issues *de novo*." *Zenith Radio Corp. v. Hazeltine Research, Inc.,* 395 U.S. 100, 123, 89 S.Ct. 1562, 1576, 23 L.Ed.2d 129 (1969). If a district court's account of the evidence is plausible in light of the record viewed in its entirety, the court of appeals may not reverse it even though convinced that had it been sitting as the trier of fact, it would have weighed the evidence differently. Where there are two permissible views of the evidence, the fact-finder's choice between them cannot be clearly erroneous.

470 U.S. 564, 573, 105 S.Ct. 1504, 1511, 84 L.Ed.2d 518 (1985).

In determining that the parties had an agreement, the district court first considered their conduct. It noted that, in the past, they had established a course of dealing and that their conduct in 1980 followed the established "pattern." Mem. op. at 11. The court found IFSI's March 5, 1980 telex to be a request for an offer from SNACI. When SNACI responded with quantities and other specifications, IFSI responded quoting "firm prices" as well as quantities with the notation "firm contract will follow." The district court found that these telexes showed "a clear intention by IFSI of making an agreement for the sale of corn to SNACI." *Id.* at 11–12. This finding rested on several bases: 1) the conduct of the parties during 1980; 2) the conduct of the parties during prior years; and 3) the requirements for a valid contract under Illinois' version of the Uniform Commercial Code, Ill.Rev.Stat. ch. 26, ¶¶ 1–101 *et seq.* (U.C.C.).

Considering the first basis, after the exchanges in early 1980, IFSI contracted to buy corn from its suppliers while SNACI contracted to sell corn to its customers. Moreover, as noted above, Mr. Cochran wrote a letter regarding the May 1980 meeting in Italy. This letter discussed the 1980 shipment to SNACI. Second, the court noted that, in certain prior years, the parties had no written agreement until late in the year, and that the writing apparently served mainly to facilitate the passage of the corn through Italian customs. Finally, the district court noted that the agreement met the requirements of the U.C.C. regarding: 1) the Statute of Frauds, section 2–201;[2] 2) the existence of an agreement, section 2–204(1); and 3) the definiteness of the terms of the contract, section 2–204(3).[3]

Viewing the record as a whole, as we must under *Anderson*, we cannot say that the district court's findings are clearly erroneous. Although there was conflicting testimony, there was certainly testimony to support the district court's finding that the

---

**2.** IFSI argues that the district court relied on section 2–201 of the Uniform Commercial Code (U.C.C.), Ill.Rev.Stat. ch. 26, ¶ 2–201, which establishes the requirements a writing must satisfy to be valid under the Statute of Frauds, to establish the existence of a contract. This argument inaccurately characterizes the district court's discussion of section 2–201. Apparently, the district court was simply commenting that the contract met the requirements of the Statute of Frauds (a point not here at issue). The fact that the court followed this discussion with a discussion of section 2–204, which addresses the establishment of an agreement, indicates that the court understood the relationship between

these two provisions and did not rely on the criteria of section 2–201 in finding that the parties had entered into an agreement.

**3.** Relying on *Lambert Corp. v. Evans,* 575 F.2d 132, 135 (7th Cir.1978), the district court rejected IFSI's argument that the facts here showed that the parties did not intend to make a binding agreement until such agreement was reduced to writing. *SNACI, s.r.l. v. Illinois Foundation Seeds, Inc.,* No. 83 C 2043, mem. op. at 12–13 (C.D.Ill. March 21, 1986); R.78a at 12–13. The court also rejected IFSI's argument that, if a contract had been made, Mr. Rani terminated

parties intended to enter into an agreement. Tr. at 9–20; *see Gianukos*, at 652 ("[W]e must be careful in our review to respect the district judge's factual findings, particularly her credibility determinations."). Moreover, the telexes exchanged by the parties and Mr. Cochran's letter of May 20, 1980 provided additional evidence to support the court's finding. Finally, the district court's finding was also supported by evidence that, in prior years, the parties had modified their agreements late into the year and that in some years, they had failed to reduce their agreement to writing until late in the year.[4]

While many of IFSI's arguments could have been accepted by a trier of fact, there is also a solid basis in the record for the district court's findings. As *Anderson* requires, when there are "two permissible views of the evidence, the fact-finder's choice between them cannot be clearly erroneous." *Anderson*, 470 U.S. at 574, 105 S.Ct. at 1512 (quoting *United States v. Yellow Cab Co.*, 338 U.S. 338, 342, 70 S.Ct. 177, 179, 94 L.Ed. 150 (1949)). Thus, we cannot say that the district court's findings were clearly erroneous.[5]

## CONCLUSION

The opinion of the district court reflects considerate attention to the factual arguments of the parties and a careful determination of each contested point. Accordingly, the judgment of the district court is affirmed.

AFFIRMED

---

the agreement during his July trip to Illinois. The court characterized IFSI's argument as "disingenuous," noting that IFSI was put on notice that Mr. Rani's interests were not necessarily the same as SNACI's at that time, and that IFSI's subsequent conduct was inconsistent with such a position. *Id.* at 15.

4. IFSI argues that the communications between the parties (absent the "Hybrid Seed Corn Production and Purchase Agreement") are insufficient to show a contract between the parties because they lack essential terms regarding: 1) time of shipment and payment; 2) interest; and 3) germination rate. As noted by the district court, section 2–204(3) of the U.C.C. provides that a contract will not fail simply because terms are left open: "Even though one or more terms are left open a contract for sale does not fail for indefiniteness if the parties have intended to make a contract and there is a reasonably certain basis for giving an appropriate remedy." Ill.Rev.Stat. ch. 26, ¶ 2–204(3).

The U.C.C. has provisions dealing with open terms regarding delivery, payment and credit.

*See* Ill.Rev.Stat. ch. 26, ¶¶ 2–309, 2–310. While the U.C.C. has no specific provision for dealing with an open term regarding germination rate, the absence of such a term does not cause this contract to fail for indefiniteness because the parties "intended to make a contract and there is a reasonably certain basis for giving an appropriate remedy." Ill.Rev.Stat. ch. 26, ¶ 2–204(3); *see URSA Farmers Coop. Co. v. Trent*, 58 Ill.App.3d 930, 16 Ill.Dec. 348, 350, 374 N.E.2d 1123, 1125 (1978) (under ¶ 2–204(3), contract shown "with sufficient certainty" when parties agreed to price and quantity and evidence of "custom" was presented regarding certain open terms).

5. SNACI also appeals the district court's dismissal of its claim for tortious interference with the contract and conspiracy to breach contract. However, as SNACI states, it raises these challenges only in the event that the district court's finding on the breach of contract claim were reversed. Therefore, we need not address that issue. Finally, as IFSI has raised no challenge to the amount of damages awarded to SNACI, we have no basis to disturb that award.